STATE, Respondent, v. CYDZIK, Appellant.

*No. State 85.   Argued October 3, 1973.—Decided October 30, 1973.*
(Also reported in 211 N. W. 2d 421.)

684

686

For the appellant there was a brief by *James M. Shellow, James A. Walrath,* and *Shellow & Shellow,* all of Milwaukee, and oral argument by *James M. Shellow* and *Mr. Walrath.*

For the respondent the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

ROBERT W. HANSEN, J. Eight issues are raised by the defendant on this appeal and each will be considered in turn.

*Sufficiency of the information.* The information charged the defendant with first-degree murder as a party to the crime. Defendant claims error in the failure of the information to set forth the specific subsection of the party-to-a-crime statute relied upon.[1] The statute does not require that a defendant be specifically charged

---

[1] Sec. 939.05 (2), Stats., providing:

"A person is concerned in the commission of the crime if he:

"(a) Directly commits the crime; or

"(b) Intentionally aids and abets the commission of it, or

"(c) Is a party to a conspiracy with another to commit it or advises, hires, counsels or otherwise procures another to commit it. Such a party is also concerned in the commission of any other crime which is committed in pursuance of the intended crime and

with violation of the section, stating instead, "Whoever is concerned in the commission of a crime is a principal." [2] This court has held that it is not mandatory to refer to the party-to-a-crime section, giving as one reason the fact that "it is often difficult to tell in advance of filing the information whether to charge the defendant as the principal or under this section as a party to the crime." [3] This reason applies to reference to a subsection at least as much and as well as it does to reference to the section. Where reference to the party-to-a-crime section is not mandatory, we see no reason to hold referring to a particular subsection to be required. We see no relevance to the federal court case cited by defendant dealing with prejudice arising where there are "two joined offenses which are clearly distinct in time, place and evidence." [4] In the case before us, time, place and evidence relate to a single killing during a single armed holdup.

---

which under the circumstances is a natural and probable consequence of the intended crime. . . ."

[2] Sec. 939.05 (1), Stats., providing: "Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although he did not directly commit it and although the person who directly committed it has not been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act."

[3] *Bethards v. State* (1970), 45 Wis. 2d 606, 618, 173 N. W. 2d 634. *See also: State v. McClanahan* (1972), 54 Wis. 2d 751, 755, 196 N. W. 2d 700, holding: ". . . in the absence of circumstances showing a detrimental effect on the defendant, the failure to charge under sec. 939.05 is harmless error." *See also: Nicholas v. State* (1971), 49 Wis. 2d 683, 693, 183 N. W. 2d 11, stating: ". . . We conclude that failure to charge the defendant under the party-to-a-crime section, in the absence of other circumstances showing a detrimental effect on the defendant, would be harmless error."

[4] *Cross v. United States* (D. C. Cir. 1964), 335 Fed. 2d 987, at page 989, dealing with Rule 14, F. R. Cr. P., requiring a separate trial where offenses are joined in the indictment if prejudice

*Testimony concerning drugs.* A witness for the state was permitted to testify that on the day of the robbery the defendant stated he was going to take one or two pills because he had to stay up late that night. Trial counsel's objection was that such testimony was "unconnected" and "prejudiced defendant's rights." On appeal, defendant contends the reference to defendant's pill-taking was prejudicial evidence of another crime. Evidence which tends to prove another crime is usually not admissible to prove the crime for which defendant is presently charged.[5] However, other-crimes evidence which tends to show intent may be admitted.[6] Where other-crimes evidence is relevant or probative with regard to the charge for which defendant is being tried, it may be admitted in the discretion of the trial court.[7] The test here is whether probative value was outweighed by "substantial danger of undue prejudice."[8]

results from joinder. *See also: United States v. Gower* (5th Cir. 1971), 447 Fed. 2d 187, 193, certiorari denied, 404 U. S. 850, 92 Sup. Ct. 84, 30 L. Ed. 2d 88; *United States v. Heard* (6th Cir. 1971), 443 Fed. 2d 856, 859, certiorari denied, 404 U. S. 850, 92 Sup. Ct. 86, 30 L. Ed. 2d 89; *United States v. Roselli* (9th Cir. 1970), 432 Fed. 2d 879, 895, certiorari denied, 401 U. S. 924, 91 Sup. Ct. 883, 27 L. Ed. 2d 828; holding that one indicted for a substantive crime may be convicted as an aider and abettor although not charged as such in the indictment.

[5] *State v. Raether* (1951), 259 Wis. 391, 393, 48 N. W. 2d 483. *See also:* 1 Wharton's Torcia, *Criminal Evidence* (13th ed.), pp. 528–531, sec. 240; *State v. Stevens* (1965), 26 Wis. 2d 451, 132 N. W. 2d 502; *State v. Lombardi* (1959), 8 Wis. 2d 421, 99 N. W. 2d 829.

[6] *Herde v. State* (1941), 236 Wis. 408, 295 N. W. 684.

[7] *Whitty v. State* (1967), 34 Wis. 2d 278, 294, 149 N. W. 2d 557, holding: ". . . We think the admissibility of prior-crime evidence does not depend upon admission or conviction for prior criminal conduct but upon its probative value which depends in part upon its nearness in time, place and circumstances to the alleged crime or element sought to be proved."

[8] *Id.* at page 294, adopting Rule 303 of the American Law Institute Model Code of Evidence, providing:

On the record here, there is every indication that "pills" mentioned by defendant were to be taken to keep him alert and awake, and no necessary implication that such no-doze pills were illegal or dangerous drugs. Here it does not appear that the evidence admitted was ". . . of so little probative value as contrasted to its possible prejudicial effect that the trial judge abused his discretion in letting it in." [9] On the corollary issue raised that the proper scope of recross-examination was exceeded, we find no abuse of discretion. [10] This court has given trial courts considerable latitude in determining what is proper cross-examination, [11] and we see no reason for narrowing that area of trial court discretion when it comes to recross or redirect interrogation of a witness. Sound discretion was not here exceeded.

"(1) The judge may in his discretion exclude evidence if he finds that its probative value is outweighed by the risk that its admission will

". . .

"(b) create substantial danger of undue prejudice or of confusing the issues or of misleading the jury . . . ."

[9] *Price v. State* (1967), 37 Wis. 2d 117, 133, 154 N. W. 2d 222.

[10] *See:* 98 C. J. S., *Witnesses*, pp. 222, 223, sec. 419 b, stating: "Reexamination generally should be confined to the scope of the cross-examination and testimony beyond this is properly excluded. It is not legal error, however, to allow a question on redirect examination that should have been asked on direct examination. The court, in the exercise of its discretion, . . . may permit the reexamination to go beyond the scope of the cross-examination, even though the testimony should have been brought out on direct examination. It is not an abuse of discretion to allow a party, on redirect examination, to supply testimony omitted by oversight, or to clarify testimony given on direct examination, or, where the facts thus developed are not inconsistent with his previous answers, to ask a witness to expand his testimony."

[11] *Boller v. Cofrances* (1969), 42 Wis. 2d 170, 181, 166 N. W. 2d 129, stating: ". . . The rule against questioning any witness 'beyond the scope of direct examination' has no intrinsic merit and does not demonstrably assist in the search for the truth. . . .

". . . If the question is relevant and is otherwise admissible and the information solicited is within the knowledge of the

*Right to counsel.* Police testimony was that the defendant was fully advised of his right to counsel and right to remain silent on three occasions: (1) When he was arrested by Milwaukee police officers outside his home at 10:50 p. m.; (2) when he was to be taken by Waukesha deputy sheriffs from the Milwaukee police station at about 1:45 a. m.; and (3) when he arrived at the Waukesha sheriff's department at about 3 a. m. The defendant's only challenge to this testimony is as to the second warning in the Milwaukee police department garage. The trial court found that the requirements of *Miranda* [12] were met, and that finding certainly is not contrary to the great weight and clear preponderance of the evidence, [13] particularly not where the defendant himself testified, at the *Goodchild* hearing, that he was fully advised of his right to an attorney when he was first placed under arrest. There is no requirement that *Miranda* warnings be repeated once they are given. There is no reason not to repeat them, but no requirement so to do. [14] When defendant was first

witness, it should be within the sound discretion of the trial judge to determine whether or not questions on cross-examination prevent an orderly and cogent presentation of the evidence. . . ."

[12] *See: Miranda v. Arizona* (1966), 384 U. S. 436, 86 Sup. Ct. 1602, 16 L. Ed. 2d 694.

[13] *State v. Parker* (1972), 55 Wis. 2d 131, 135, 197 N. W. 2d 742, holding: "While the burden of proof is upon the state to show beyond a reasonable doubt that statements or confessions are admissible, on review by this court the test is whether the findings by the trial court were contrary to the great weight and clear preponderance of the evidence. . . ."

[14] *Maguire v. United States* (9th Cir. 1968), 396 Fed. 2d 327, 331 (*Miranda* warning three days before interrogation held sufficient); *Miller v. United States* (8th Cir. 1968), 396 Fed. 2d 492, 496 (*Miranda* warning at 11:10 a. m. held sufficient as to statement signed at 2:30 p. m.); *Babcock v. State* (Tex. Cr. App. 1971), 473 S. W. 2d 941, 943 (*Miranda* warning two days before confession held sufficient); *State v. Cluck* (Mo. 1970), 451 S. W. 2d 103, 105 (*Miranda* warning three hours prior to confession sufficient and indicates voluntariness); *United States v. Springer*

advised of his *Miranda* rights, he stated that before he incriminated himself he had better see an attorney. He was allowed to call his father with whom he spoke about getting an attorney. No subsequent request for an attorney was made by defendant. An individual in custody who has claimed the right to remain silent under *Miranda* has the right to change his mind and to decide to volunteer a statement.[15] Such individual in such situation may waive his right to remain silent and volunteer a statement.[16] The sole issue then is whether the defendant's statements to the police were voluntarily made. The defendant claims that the voluntariness of his subsequent statements was eroded by the fact that Detective Conway told him his cooperation would be to his benefit. Such statement by a law enforcement officer falls far short of creating the "compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." [17] Even a promise of leniency would not, standing alone, do that.[18] Whether such statements by the defendant are voluntary or the result of coercion depends upon the "totality of the circumstances." [19] The

---

(7th Cir. 1972), 460 Fed. 2d 1344, 1351, 1353 (full *Miranda* warnings given May 16, 1970, less thorough warnings given May 18, 1970, confession signed subsequently on May 18).

[15] *Wright v. State* (1970), 46 Wis. 2d 75, 88, 175 N. W. 2d 646.

[16] *Sharlow v. State* (1970), 47 Wis. 2d 259, 270, 177 N. W. 2d 88, certiorari denied, 400 U. S. 881, 91 Sup. Ct. 126, 27 L. Ed. 2d 119.

[17] *State v. La Fernier* (1967), 37 Wis. 2d 365, 377, 155 N. W. 2d 93, quoting *Miranda v. Arizona, supra,* at page 467.

[18] *Pontow v. State* (1973), 58 Wis. 2d 135, 139, 205 N. W. 2d 775, stating: ". . . a promise of leniency will not in itself invalidate a confession . . . other surrounding circumstances must be considered. . . ." (Citing *Brady v. United States* (1970), 397 U. S. 742, 753, 90 Sup. Ct. 1463, 25 L. Ed. 2d 747.)

[19] *State v. Wallace* (1973), 59 Wis. 2d 66, 81, 207 N. W. 2d 855, stating: "Whether or not a confession is voluntary and not the result of coercion depends upon the 'totality of the circumstances.'

advice of the police detective to the defendant to co-operate falls short of creating any coercive pressure for the self-incriminating statements of defendant which began soon after the advice was given. While the hour was late and the trial court noted the one and one-half hour stay of defendant at police headquarters in Milwaukee, there is here no indication of lengthy interrogation of any deliberate tactics to impel defendant to volunteer a statement. We affirm the trial court holding that defendant's statements were volunteered and entirely voluntary.

*Admission of hat.* Defendant contends that there was no probable cause for issuance of a search warrant for a hat allegedly worn by the defendant during the armed robbery. Since this issue was not raised before or at the time of trial, it is waived. Objections to use of illegally secured evidence are to be made prior to trial, or, in case of surprise, at the time of trial.[20] Incidentally, there is neither any indication nor argument that the defendant was surprised by the admission of his hat into evidence, so here the objection should have been raised prior to trial. It was not.

*Instructions to jury.* In three particulars, defendant on appeal claims error in the instructions given the jury by the trial judge. The trial court gave the standard instruction on aiding and abetting.[21] This instruction has been approved by this court.[22] No objection was made by defendant to this instruction either before or after it was made. Defendant now contends the trial court should have given an instruction on aiding and

---

The test is whether 'the totality of the circumstances that preceded the confessions . . . goes beyond the allowable limits.' " (Citing *Fikes v. Alabama* (1957), 352 U. S. 191, 197, 77 Sup. Ct. 281, 1 L. Ed. 2d 246.)

[20] Sec. 971.31 (2), Stats.

[21] As contained in Wis J I—Criminal, Part I, 400.

[22] *Taylor v. State* (1972), 55 Wis. 2d 168, 177, 197 N. W. 2d 805.

abetting third-degree murder. The trial court did instruct on aiding and abetting, following such instruction with instructions as to first-degree murder and third-degree murder. No request was made by defendant for such instruction, and no specific objection made at the trial to the instruction as given. Defendant now objects to the court's instruction on first-degree murder. While defense counsel did move for dismissal of the first-degree murder count on grounds of insufficiency of evidence, there was no objection at trial to the instruction as given on elements of the crime. While in postconviction motions the defendant did generally claim that the trial court erred in instructing the jury, nowhere were the specific objections raised on appeal raised in the trial proceedings. This court "has consistently held that it would consider the failure to timely object to jury instructions as a waiver of any alleged defects in those instructions." [23] We conclude that the defendant here has waived his right to object to the trial court instructions as given.

*Prosecutor's closing arguments.* Defendant claims prosecutor's closing arguments were improper in four particulars: (1) That the prosecutor "interjected his own personal belief on the defendant's guilt or on the credibility of his defense." This court has rejected the strict rule against a prosecutor expressing an opinion based on the evidence.[24] In this state a prosecutor may

[23] *State v. Schenk* (1972), 53 Wis. 2d 327, 333, 193 N. W. 2d 26, citing *Kimmons v. State* (1971), 51 Wis. 2d 266, 268, 186 N. W. 2d 308; *Mitchell v. State* (1970), 47 Wis. 2d 695, 699, 700, 177 N. W. 2d 833.

[24] *Embry v. State* (1970), 46 Wis. 2d 151, 160, 161, 174 N. W. 2d 521, stating: ". . . In Wisconsin a prosecutor or a defense counsel may comment on the evidence, detail the evidence, argue from it to a conclusion and state that the evidence convinces him and should convince the jurors. However, when such an opinion is expressed it must be clear that it is based solely upon the evidence in the case. . . ."

give his personal opinion limited to the evidence actually adduced at trial.[25] That is what the prosecutor here did. (2) That the prosecutor sought to convince the jury that the defendant was "the architect of the robbery." The thrust of the prosecutor's argument was that the robbery was preplanned, and there was ample evidence in the record to support such contention. (3) That the prosecutor "impliedly asked the jurors to consider the difference in penalties." The prosecutor's argument, in its entirety, stressed the jury conforming its verdict to the evidence and not arriving at a less severe verdict out of sympathy. This was proper.[26] (4) That the prosecutor referred to defendant as "a long-haired criminal." Defense counsel argued to the jury that young people have a code of conduct of their own. The prosecutor responded to the effect that young people—long hair or not—must conform to the same code of conduct as anyone else. Viewed as a response,[27] we find no impropriety in the reference. Additionally, the statements here involved were not objected to by defense counsel at the time of trial. An objection to improper argument must be voiced when it is made or, at the very latest, prior to return of the verdict.[28]

*Polling of jury.* The defendant now claims he was denied his right to poll the jury. Subsequent to the

[25] *Id.* at page 161, quoting *Fertig v. State* (1898), 100 Wis. 301, 308, 75 N. W. 960, stating: " 'So long as counsel did not depart from the evidence produced, but confined his argument to reasoning from that up to the conclusion that it established guilt, however eloquently and persuasively he may have handled his subject, it was not only legitimate but commendable. . . .' "

[26] *See:* 88 C. J. S., *Trial,* p. 375, sec. 191; p. 379, sec. 193.

[27] *See: Andritsch v. Henschel* (1965), 27 Wis. 2d 461, 464, 134 N. W. 2d 426.

[28] *Hubbard v. Mathis* (1972), 53 Wis. 2d 306, 307, 193 N. W. 2d 15; *Ash v. American Family Mut. Ins. Co.* (1967), 33 Wis. 2d 592, 600, 148 N. W. 2d 58; *Kink v. Combs* (1965), 28 Wis. 2d 65, 72, 135 N. W. 2d 789.

reading of the verdicts, trial defense counsel requested that the jury be polled. Each juror's name was read, and each replied, "Guilty, first degree." Then the trial court stated, "Just to complete the matter, was—the verdicts in file as read by the Court, was that your verdict and is that your verdict now, all of you?" The jury responded, "Yes." Then the court said to defense counsel, "Anything else?" The defendant's trial counsel answered, "Not at this moment, if the Court please." The reason for defense counsel's not requesting a separate polling on the armed robbery conviction is hardly unrelated to the admission of guilt on that charge by defense counsel during his closing arguments. In any event, the defendant's trial counsel made no request for any additional polling of the jury when given the opportunity to so request. Any deficiency or incompleteness was thus and then waived.[29]

*Sufficiency of evidence.* Defendant contends that the evidence does not support a conviction of first-degree murder, party to the crime as an aider and abettor. As defendant's brief summarizes the point raised, "Every act, every move that Cydzik made that evening was connected to the robbery, and not to the murder." That is to say that defendant intended to participate in an armed robbery, but did not intend to aid or assist in the murder that occurred during the robbery. In a limited and literal concept of intending, that may describe what the lookout or driver of a getaway car has in mind when he sets out to aid and abet the armed holdup of a bank. He does not have in mind the murder of a security guard or bank customer. He has in mind a robbery and his sharing, as the defendant did here, in the proceeds of the robbery. Certainly the driver of

---

[29] *See:* 23A C. J. S., *Criminal Law,* p. 1052, sec. 1392c. *See also:* 24 C. J. S., *Criminal Law,* pp. 1109–1112, sec. 1673 (4).

the getaway car in a case before this court,[30] convicted as a party to the crime under the conspiracy subsection of the party-to-a-crime statute,[31] set out to rob a service station, not to kill the attendant in charge. But legal intent may be inferred from conduct.[32] One is presumed to intend natural and probable consequences of his act.[33] Given two armed robbers, holding up a supper club or service station, it is entirely reasonable to infer on the part of each an intention to assist the other in the event that there is a shooting or killing as well as an intention to assist the other in the emptying of the cash register.

[30] *State v. Henger* (1936), 220 Wis. 410, 264 N. W. 922, where three defendants were all convicted of first-degree murder under the following facts: The three stole a car and cruised around the Milwaukee area intending to hold up service stations and taverns. They possessed a revolver which they intended to use but which, they testified, was not to be fired. Defendant Henger stayed in the car when the other two approached a service station attendant. A scuffle ensued and the attendant was killed. Defendant Henger drove the other two from the scene of the crime.

[31] *Id.* at pages 416, 417, this court stating: "There can be no doubt that the jury was justified in finding Beckman guilty of murder in the first degree. As was said in *Pollack v. State* [(1934), 215 Wis. 200, 211, 253 N. W. 560, 254 N. W. 471], 'No principle of law is better established than that where several parties conspire or combine together to commit an unlawful act, each is criminally responsible for the acts of his associates committed in the prosecution of a common design, the act of each one of the conspirators being, in contemplation of law, the act of each and all. . . .' "

[32] *Hawpetoss v. State* (1971), 52 Wis. 2d 71, 80, 187 N. W. 2d 823.

[33] 22 C. J. S., *Criminal Law*, p. 121, sec. 35, stating: "It is a general rule, applicable in all criminal cases, including those where a specific intent is an element of the crime, that accused, if sane, is presumed to intend the necessary or the natural and probable consequences of his unlawful voluntary acts, knowingly performed." *See also: State v. Vinson* (1955), 269 Wis. 305, 309e, 68 N. W. 712, 70 N. W. 2d 1; *State v. Carlson* (1958), 5 Wis. 2d 595, 604, 93 N. W. 2d 354; *State v. McCarter* (1967), 36 Wis. 2d 608, 612, 153 N. W. 2d 527.

As the rule has been stated, ". . . the mere intention to assist, should it become necessary, if there is preconcert between accused and the perpetrator, or if the latter has knowledge of such presence and intent, will constitute an aiding and abetting."[34]

The trial court correctly instructed the jury that an aider and abettor is one who "is ready and willing to render aid, if needed, and the person who commits the crime knows of his willingness to aid him." As previously noted, this is from the standard instructions,[35] approved by this court.[36] At first blush this may seem a broader definition of aiding and abetting than one stated in the *Nutley Case*.[37] There this court held one is aiding and abetting if "he undertakes conduct (either verbal or overt action) which as a matter of objective fact aids another person in the execution of a crime," and if "he consciously desires, or 'intends' that his conduct will yield such assistance."[38] Applied to this set of facts, there is no difference in the test. Here to be "ready and willing to render aid, if needed," was to undertake conduct which "as a matter of objective fact aids." If the trigger-puller here had had five armed colleagues stationed about the premises, something more than a standby service was being provided. The likelihood of someone jumping on the back of the gun-wielder, wrestling the weapon away from him, or interfering with his leaving the premises unimpeded would be not only lessened, but removed as a practical hazard, not only to completing the crime of robbery but to completing

[34] 22 C. J. S., *Criminal Law*, p. 267, sec. 88 (2)e.

[35] Wis J I—Criminal, Part I, 400.

[36] *Taylor v. State* (1972), 55 Wis. 2d 168, 177, 178, 197 N. W. 2d 805.

[37] *State v. Nutley* (1964), 24 Wis. 2d 527, 129 N. W. 2d 155.

[38] *Id.* at page 555, adding, "However, it is not necessary that the aider and abettor enter into an agreement with the perpetrator to assist him in consummation of the crime. . . ."

the crime of murder. That one armed accomplice stood near the door instead of five dilutes the protection but does not change either role or responsibility of second gun toter present. In *Nutley*, the defendant held a gun on one police officer and told a second to stop firing. This conduct, the court held, made Nutley an aider and abettor of the shooting of the second officer by others. In *Nutley*, the defendant prevented the victim from aiding himself. In the case before us, the defendant prevented others from aiding the victim. The defendant was more than a reserve lineman sitting on the bench waiting to be sent into the game. He was in the game, on the field, playing a position or performing a function as to the commission of the murder, as well as of the robbery. Like a tailback or safety man on defense, by being "ready and willing to render aid, if needed," he was "as a matter of objective fact aid[ing] another person in the execution of a crime." The jury, on this record, was entitled to find that the defendant was aiding and abetting the crime of murder, first degree.

In a party-to-a-crime case, involving larceny from the person, this court said, ". . . While the evidence of conspiracy does not make as strong a case as the evidence of aiding and abetting, it is our opinion that the evidence is sufficient to support the inferences argued by the state and a conviction upon the ground of conspiracy." [39] In the case before us, we would see the record as establishing at least as strong a case for party-to-a-crime, conspiracy, as it does for party-to-a-crime, aiding and abetting. However, the case went to the jury only on the aiding and abetting theory, and we hold that the evidence is sufficient to support the conviction on first-degree murder, party to the crime, aiding and abetting.

*By the Court.*—Judgment affirmed.

---

[39] *Hawpetoss v. State, supra,* at page 81.