SIMPSON, Plaintiff in error, v. STATE, Defendant in error.

*No. State 162.   Argued February 6, 1974.—Decided March 5, 1974.*
(Also reported in 215 N. W. 2d 435.)

For the plaintiff in error there were briefs and oral argument by *Howard B. Eisenberg,* state public defender.

For the defendant in error the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

CONNOR T. HANSEN, J. The convictions in this case arose out of the defendant's activity in connection with the operation of a massage and alleged prostitution parlor in Dane county known as "Kathi's Sauna." The defendant was employed as the custodian and "enforcer" and his duties involved cleaning the sauna, protecting the girls from the customers, keeping the girls "in line," and whatever else Chico Artez, the owner, told him to do, such as running errands, banking and chauffeuring the girls to assignations for prostitution.

October 12, 1971, the defendant tied Vennie Rainey on a bed, gagged, blindfolded and in an unclothed condition. In this condition, he administered a beating to "get her in the right state of mind." This incident is the basis

for the first count of endangering safety by conduct regardless of life, contrary to sec. 941.30, Stats. The second count, charging the same crime, resulted from a somewhat similar beating given to Sherry Miller, another employee of the sauna, on or about October 30, 1971.

During the beating of Sherry Miller, the defendant forced her to perform fellatio on himself. This act resulted in the charge of sexual perversion, contrary to sec. 944.17 (1), Stats.

The two counts of party to false imprisonment, contrary to secs. 940.30 and 939.05 (1) and (2) (b), Stats., arise out of the confinement of Vennie Rainey and Sherry Miller in connection with their respective treatments and beatings.

The charge of obstructing an officer, contrary to sec. 946.41 (1), Stats., arises out of an incident that occurred on November 6, 1971. A police officer went to the sauna to locate a runaway juvenile girl. The defendant told the officer that the girl was not present and he did not know her, although she was actually in the room at the time and he did know her.

*Issues.*

Three issues are raised on this review:

1. Was the trial court's refusal to allow lay witnesses to give opinions as to the defendant's sanity, based upon their personal observations, prejudicial error?

2. Was the trial court's refusal to instruct the jury as to the consequences of the verdict if they found the defendant not guilty by reason of mental disease or defect prejudicial error?

3. Should the legal definition of antisocial conduct be interpreted to conform to the medical definition of antisocial personality disorder?

*Lay witnesses' opinion testimony.*

The defendant submitted that the trial judge refused to permit Vennie Rainey and Sherry Miller, the two victims, and Kathi Ghinter, a third member of the personnel of the sauna, to testify as lay witnesses as to their opinion as to the sanity of the defendant. Further that such refusal was prejudicial error.

The general rule in Wisconsin is that the admission of opinion evidence rests largely in the discretion of the trial court. *York v. State* (1970), 45 Wis. 2d 550, 559, 173 N. W. 2d 693. The opinion testimony of lay witnesses has been admitted in evidence on many subjects. It has been considered on the issue of insanity. *Lowe v. State* (1903), 118 Wis. 641, 96 N. W. 417; *Duthey v. State* (1907), 131 Wis. 178, 111 N. W. 222; *Robinson v. State* (1910), 143 Wis. 205, 126 N. W. 750. However, the fact that lay witnesses' opinion testimony on the issue of insanity has been sanctioned, does not mean that these cases stand for the proposition that a lay witness categorically has the right to give opinion testimony on the issue of insanity.

The use of the opinion testimony of the witnesses was discussed at a conference in chambers. The trial judge stated he would permit the witnesses to give their impressions and observations, but not an opinion on the state of the defendant's sanity. Each of these witnesses were questioned extensively and the jury had the benefit of the impressions and observations of the defendant's conduct, actions, manners, expressions and conversations. The jury had the ultimate duty of determining the issue of fact as to whether the defendant was mentally responsible for his criminal actions. In order to arrive at that decision, they had the benefit of the impressions and observations of these three witnesses, and the expert opinion of two qualified psychiatrists, one of whom testi-

fied favorably to the defendant, the other unfavorably. A police sergeant of the city of Monona was also called as a witness. Counsel for the defendant asked this witness if he had any idea what the defendant meant by a certain statement. Objection was entered and the trial court instructed counsel to make the question more positive. The trial court did not sustain the objection, and counsel did not pursue the matter further.

From our examination of the record, it does not appear that any of these witnesses were ever asked for an opinion as to the defendant's state of insanity, and no offer of proof was ever made. Even if it was prejudicial error for the trial judge to refuse to permit these lay witnesses to give opinion evidence on the issue of insanity, it is incumbent upon trial counsel to make a proper record. We are of the opinion the trial judge did not abuse his discretion in refusing to permit these lay witnesses to give opinion testimony on the issue of defendant's insanity.

### Instructions.

Defendant requested the trial court to instruct the jury that if the defendant was found not guilty by reason of mental illness or disease, he would not be released, but committed to the department of health & social services to be placed in an appropriate institution for care, custody and treatment until and unless discharged by law.

The trial court declined to give the requested instruction, and it is contended this was prejudicial error. This contention is based upon the assertion that absent such instruction the jury might speculate that a verdict of not guilty by reason of mental illness might have the effect of releasing the defendant.

In *State v. Shoffner* (1966), 31 Wis. 2d 412, 428, 429, 143 N. W. 2d 458, it was determined in cases involving

the issue of insanity, an exception to the general rule would be recognized and juries could be advised of the effect of their verdict. In *Shoffner, supra,* pages 428, 429, it was stated: ". . . We would prefer that the instruction be given, although we do not deem it prejudicial error not to have done so." We are not persuaded by defendant's argument that these statements in *Shoffner* are "based" on *Bean v. State* (Nev. 1965), 398 Pac. 2d 251, 256. *Shoffner* merely cites *Bean* along with cases from the District of Columbia, in its discussion of the use of this instruction. Also, in *Nelson v. State* (1967), 35 Wis. 2d 797, 811, 151 N. W. 2d 694, it was stated that while it was preferred that this instruction be given, it was not prejudicial error not to give it. In the instant case, the refusal of the trial judge to give the requested instruction was not prejudicial error.

*Definition of antisocial conduct.*

*State v. Shoffner, supra,* extensively considered the defense of insanity in criminal proceedings. The result of *Shoffner* was that the definition of insanity propounded by the American Law Institute, Model Penal Code, secs. 4.01 and 4.03, was established as an available defense. Subsequently, and by the enactment of the Wisconsin Criminal Procedure Code, Laws of 1969, ch. 255, effective July 1, 1970, the American Law Institute definition of insanity, recognized in *Shoffner,* was embodied verbatim in sec. 971.15, Stats.

Sub. (2) thereof provides:

"971.15 **Mental responsibility of defendant.**
"...
"(2) As used in this chapter, the terms 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct."

One of the psychiatrists testified that he found the defendant to have an "antisocial personality disorder." The doctor defined antisocial personality disorder to include a "person who did not learn by experience, who grew up in a kind of an environment where the behaviors of that person were viewed as wrong, as unacceptable, and yet the person would act out toward other people, doing illegal or immoral kinds of things with very little sense of conscience."

Therefore, argues the defendant, a person found to have an antisocial personality disorder has a mental disease or defect so as to lack substantial capacity to either appreciate the wrongfulness of his conduct or conform his conduct to the requirements of the law. Thus, urges the defendant, we should "interpret" the American Law Institute definition which excludes antisocial behavior as a mental disease and as first approved by this court, *State v. Shoffner, supra,* and later adopted by the legislature as sec. 971.15, Stats., so as to conform to the medical definition of the mental illness called an "antisocial personality disorder." As we view such a suggestion, it would have the practical effect of abolishing the statutory exclusion of "an abnormality manifested only by repeated criminal or otherwise antisocial conduct," from the definition of "mental disease or defect." This we decline to do because, by adopting sec. 971.15, the legislature has deliberately and positively excluded antisocial conduct from the statute.

*By the Court.*—Judgment and order affirmed.