STATE of Wisconsin, Plaintiff-Respondent,

v.

Thomas D. STANTON, Defendant-Appellant.†

### Court of Appeals

*No. 81–411. Submitted on briefs October 8, 1981.
—Decided January 21, 1982.*
(Also reported in 316 N.W.2d 134.)

---

† Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Ruth S. Downs,* assistant state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *David J. Becker,* assistant attorney general.

Before Gartzke, P.J., Bablitch, J., and Dykman, J.

GARTZKE, P.J.   Defendant Stanton was convicted of first-degree murder, party to the crime, in violation of secs. 940.01 and 939.05, Stats. 1975, and of armed robbery, party to the crime, in violation of secs. 943.32 (1) (a) and (2) and 939.05, Stats. 1975. He appeals from an order denying his sec. 974.06, Stats., motion as to the murder conviction. No appeal is taken from the armed robbery conviction. We affirm.

A partial recitation of the facts is useful for an understanding of the issues.

June 9, 1975 Ronald Schilling, Robert Zelenka and Stanton drove with Michael Posthuma to a rural area. Mrs. Posthuma testified that her husband had gone to make a marijuana deal with Schilling. Stanton and Schilling did not testify at their joint trial. They had given statements to the police which indicated a plan to knock out Posthuma and rob him, but no plan to kill him. Defendant unsuccessfully tried to knock out Posthuma with a hammer. After the first couple of blows, defendant was defending himself from Posthuma.

A pathologist witness could not tell whether the hammer blows were defensive or offensive. He saw signs of three hammer blows, one of which was a glancing blow. He said that two of the hits were made before the knife wounds he observed. One of the blows fractured Posthuma's skull. The pathologist testified that the blows could have caused a person's death, although they were not the cause of Posthuma's death.

There is no evidence that defendant had a weapon other than the hammer.

Schilling stabbed Posthuma twenty-four times. The cause of death was a knife wound. All twenty-four blows were made about the same time. Posthuma was left in the woods and the three men returned to Madison.

Defendant's appellate counsel raises the following issues:

1. Should the jury have been instructed that Schilling's state of mind could not be imputed to defendant to fulfill the intent requirements for holding defendant responsible for the crime committed by Schilling?

2. Did the trial court err in instructing the jury that it could find defendant guilty of directly killing Posthuma?

3. Did the jury instruction on first-degree murder violate defendant's right to have the jury decide each factual issue beyond a reasonable doubt and his due process right to have the prosecution carry the burden of proof beyond a reasonable doubt as to each factual issue?

4. Should the trial court have instructed the jury that they must agree as to which, if any, mode of conduct proscribed by the party-to-the-crime statute describes defendant's conduct?

5. Was defendant prejudiced by the law barring psychiatric evidence of Schilling's capacity to intend to kill Posthuma?

Defendant's pro se brief raises the following issues:

6. Should the included offense of third-degree murder have been submitted to the jury?

7. Was the evidence sufficient to prove that Schilling intended to kill Posthuma?[1]

1. *A Party To The Crime Need Not Intend The Crime Committed*

It is undisputed that Schilling, and not defendant, killed Posthuma. First-degree murder is the crime of causing the death of another human being with intent to kill that person. Defendant argues that to find him guilty of aiding and abetting the murder, the jury had to find that defendant himself intended Posthuma's death. He concludes that the jury should have been instructed that Schilling's state of mind could not be imputed to defendant, and that the two men could be convicted of different degrees of homicide, depending on their respective states of mind.

---

[1] Defendant's pro se brief also raised the question of effective assistance of counsel. Defendant subsequently wrote to the court and asked to withdraw this issue from his appeal.

We are foreclosed from treating the issue as open. *State v. Asfoor*, 75 Wis. 2d 411, 249 N.W.2d 529 (1977), established that a person may be a party to a crime, as aider and abettor or as conspirator, even though the crime committed was not the crime which the defendant intended.

The defendant in *Asfoor* was convicted of aiding and abetting the crime of injury by negligent use of a weapon. The supreme court rejected his contention that an aider and abettor cannot be guilty unless it is shown that the crime which was committed was the crime which the aider or abettor intended to be committed. The court stated that the argument was refuted by *State v. Cydzik*, 60 Wis. 2d 683, 211 N.W.2d 421 (1973), where defendant had argued he could not be guilty of aiding and abetting first-degree murder because he intended to participate only in a robbery and not the resulting murder. The *Asfoor* court said:

> In *State v. Cydzik, supra,* we indicated clearly that one who intentionally aids and abets the commission of a crime is responsible not only for the intended crime, if it is in fact committed, but as well for other crimes which are committed as a natural and probable consequence of the intended criminal acts. Liability of this character is not limited to conspirators. . . .

75 Wis. 2d at 430, 249 N.W.2d at 537.

Conceding that sec. 939.05, Stats. 1975, could bear a different construction, the *Asfoor* court found "no sufficiently clear intent [in the statute] to overturn long and widely accepted law, and the legislative history of the statute confirms that no such result was intended." 75 Wis. 2d at 431, 249 N.W.2d at 538 (footnote omitted).

Defendant suggests that the *Asfoor* court used language which confuses the aiding and abetting and the conspiracy subdivisions of sec. 939.05, Stats. 1975. He

states that other jurisdictions have concluded that an aider or abettor cannot be held as a principal unless it is established that the aider knew that the perpetrator had the required intent. The court of appeals, however, cannot adopt the rule in another jurisdiction which is contrary to precedents established by the Wisconsin Supreme Court.

Defendant argues that *Asfoor* is not controlling. He asserts that the facts in *Asfoor* did not raise the issue whether the defendant had the intent of the perpetrator because the underlying crime, injury by negligent use of a weapon, did not include a specific intent. The contention is without merit. *Asfoor* does not support such a distinction between underlying crimes which require intent and those which do not. As the passage quoted above indicates, *Asfoor* relied on *Cydzik*, which involved a charge that required intent. The *Cydzik* court held that a party to an armed robbery could be held liable for the first-degree murder committed by another during the robbery, even though the defendant maintained that he intended only to commit the robbery, not murder.

Defendant argues that had the jury been instructed not to impute Schilling's intent to him, it might have found that defendant was willing to aid and abet Schilling in robbing Posthuma by the use of force short of murder, or that a conspiracy to rob existed, of which a natural and probable consequence was the use of less force than that which would cause death. The short answer is that under the law of this state, a party to the crime is guilty of that crime, whether or not he intended that crime or had the intent of its perpetrator. *Asfoor* and *Cydzik, supra.* Defendant argues that he should not have been convicted unless the jury could find that the intentional death of Posthuma was part of the agree-

ment between the defendants. *Cydzik* does not require such an instruction.

Defendant relies on the following statement in *State v. Nutley,* 24 Wis. 2d 527, 554–55, 129 N.W.2d 155, 167 (1964), *cert. denied,* 380 U.S. 918, 922 (1965) :

Under the complicity theory of sec. 939.05(2)(b), a person is liable for the substantive crime committed by another if (1) he undertakes conduct (either verbal or overt action) which as a matter of objective fact aids another person in the execution of a crime, and further if (2) he consciously desires, or "intends" that his conduct will yield such assistance. He must consciously direct his conduct toward the realization of the criminal objective. He must have a "stake in the outcome." (Footnotes omitted.)

The *Asfoor* court was aware of the above quotation form *Nutley.* The defendant-appellants' briefs submitted in *Cydzik* and *Asfoor* relied in part upon *Nutley* for the same proposition advanced here. Defendant's brief in *Cydzik* stated that under sec. 939.05(2)(b), Stats. 1963, an aider and abettor must consciously intend that his conduct will aid another person in the execution of a particular crime, citing *Nutley,* 24 Wis. 2d at 555, 129 N.W. 2d at 167; *State v. Bachmeyer,* 247 Wis. 294, 299, 19 N.W.2d 261, 263 (1945). *Appendices and Briefs* vol. 3148. Defendant's brief in *Asfoor,* in support of the same contention, repeated the last two sentences of the *Nutley* passage quoted above. The same defendant in his reply brief cited *Nutley* as holding "that aiding and abetting requires specific intent." *Appendices and Briefs* vol. 3270. The *Asfoor* and *Cydzik* holdings show that the court does not interpret *Nutley* to mean that an aider and abettor is liable only for the particular crime that he intended to assist.

Because a party to the crime need not intend the commission of the crime committed, there was no need to in-

struct the jury that Schilling's state of mind could not be imputed to defendant and that the two men could be convicted of different degrees of homicide.

2. *Jury Could Not Have Interpreted Instructions To Mean That They Could Convict Defendant Of Directly Killing Posthuma*

The jury was instructed on first- and second-degree murder, followed by armed robbery instructions and the standard party-to-a-crime instruction. Defendant contends that the jury should have been instructed that he could not be found guilty of directly killing Posthuma, in view of the evidence, and that he was prejudiced by the absence of such an instruction.

The jury, however, was repeatedly told that Schilling killed Posthuma and that defendant was an aider and abettor and coconspirator.

The prosecutor told the jury in his opening statement that "Schilling directly committed the crimes of armed robbery and first degree murder" and that Stanton "was a party to these crimes of armed robbery and first degree murder; that is, that he aided and abetted the murder and armed robbery of Michael Posthuma and also conspired with Mr. Schilling and another individual to commit these crimes." Schilling's counsel said in his opening statement that Schilling "started lashing and slashing at Michael Posthuma with a knife, and that led to Michael Posthuma's death, directly."

The prosecutor said in his closing argument, "Again, the evidence demonstrates overwhelmingly and beyond any doubt that Ronald Schilling intentionally murdered Michael Posthuma." The prosecutor continued: "The evidence shows that Stanton did not directly deliver the death blow, the one with the knife to Michael Posthuma himself." Schilling's lawyer told the jury in his closing

argument that "Ronald Schilling wielded the knife that led to the death."

Defendant does not dispute the state's assertion in its brief that all of the state's evidence as to the killing showed that Schilling had been the one who stabbed Posthuma to death.

It is inconceivable that the jurors would have felt free to find that defendant directly killed Posthuma. We therefore need not consider whether the jury should have been instructed as he contends. The error, if it was error, could not have prejudiced defendant.

3. *Trial Court Did Not Err In Giving Wis J I—Criminal 1100, Wisconsin's Presumption Of Intent Instruction*

Defendant concedes that the point has been decided against him by *Muller v. State,* 94 Wis. 2d 450, 289 N.W. 2d 570 (1980). He seeks to preserve the issue because the federal courts may ultimately decide it in his favor. We of course must reject his argument.

We note that defendant additionally contends that the presumption of intent language had "a double-barrelled effect" as to him. He argues that it could be used against him directly and also indirectly through whatever intent the jury might find in Schilling's mind when Schilling killed Posthuma. He reaches this conclusion because under the second subdivision of sec. 939.05 (2) (c), Stats. 1975, the question is whether the intentional killing by Schilling was a natural and probable consequence of the plan to rob Posthuma.

The contention is obscure. It seems to relate to the argument which we have previously rejected: that defendant cannot be found guilty as a party to the crime unless he is shown to have intended that the crime of first-degree murder be committed.

We are unable to find a basis for the contention that the presumption language complained of had a "double-barrelled" effect as to defendant.

4. *No Error Occurred In Failing To Instruct Jury That They Had To Reach Unanimous Agreement As To Defendant's Particular Conduct Under Subdivisions Of Sec. 939.05(2)*

Defendant concedes that the point has been decided adversely to him by *Holland v. State,* 91 Wis. 2d 134, 280 N.W.2d 288 (1979), *cert. denied,* 445 U.S. 931 (1980). He presents the issue to preserve his rights. The court of appeals is bound by the supreme court's holding in *Holland.*

5. *Expert Opinion Evidence Properly Excluded As To Capacity To Intend To Kill*

Conceding that *Steele v. State,* 97 Wis. 2d 72, 294 N.W. 2d 2 (1980), held that expert opinion evidence as to a defendant's capacity to form an intent is excluded from the guilt phase of a criminal trial, defendant notes that the issue is before the federal courts. Because we are bound by the holding of *Steele,* we do not decide the effect of defendant's failure at the trial to offer psychiatric evidence as to Schilling's capacity.

6. *"Third-Degree Murder" Instruction Not Required*

Defendant's motion for postconviction relief assigned as a separate error the court's refusal to instruct the jury on third-degree murder. The trial court, without stating a specific reason, held that this claim had no merit.

To justify submission of a lesser offense to the jury, some reasonable ground must exist for acquittal of the greater and conviction of the lesser offense. *Jordan v. State,* 93 Wis. 2d 449, 468, 287 N.W.2d 509, 517 (1980).

Because no reasonable grounds existed to acquit defendant of first-degree murder, a third-degree murder instruction was unnecessary.

Section 940.03, Stats. 1975, entitled "Third-Degree Murder," provided:

> Whoever in the course of committing or attempting to commit a felony causes the death of another human being as a natural and probable consequence of the commission of or attempt to commit the felony, may be imprisoned not more than 15 years in excess of the maximum provided by law for the felony.

Schilling savaged Posthuma with twenty-four knife wounds, at least eight of which were inflicted while Posthuma was alive. Schilling's viciousness disclosed his intent to kill. No reasonable grounds existed to find that the killing was not intentional, and therefore no reasonable grounds existed to acquit defendant, who was a party to the robbery scheme, of first-degree murder. *See* part one, *supra.* The trial court did not err in refusing to instruct the jury on third-degree murder. *Compare Jordan, supra* (third-degree murder instruction unnecessary because no reasonable grounds existed for acquittal on first-degree murder, party to the crime, as to defendant-participant in attempted robbery during which a police officer was shot ten times and killed, it never being established which participant killed the officer).

### 7. *Sufficiency Of Evidence As To Schilling's Intent*

Defendant first contends that the evidence in the guilt phase of the trial was insufficient to support a finding that Schilling intended to kill Posthuma. Defendant's postconviction motion did not raise this point. Regardless whether we are required to deal with an issue raised for

the first time on appeal, we choose to do so. The sufficiency of the evidence to find guilt beyond a reasonable doubt is a constitutional issue. *Jackson v. Virginia,* 443 U.S. 307 (1979). We reject the contention on its merits because, as we have held, it would have been unreasonable to acquit Schilling of first-degree murder.

Defendant's second contention pertains to the relationship between the guilt and second phases of Schilling's trial. Schilling had pleaded not guilty and not guilty by reason of mental disease or defect. After finding Schilling guilty, the jury rejected Schilling's claim to a mental disease or defect in phase two. Stanton contends that, regardless of the outcome of phase two of Schilling's trial, the psychiatric evidence in that part casts enough doubt on Schilling's capacity to form an intent to kill Posthuma as to require a new trial for Stanton. He contends that had the jury in the guilt phase heard the evidence it had in phase two, the jury might not have found Schilling guilty beyond a reasonable doubt, even though it subsequently failed to find to a reasonable certainty that Schilling, at the time of the commission of the crime of party to first-degree murder, had "a mental disease or defect which would cause him to lack substantial capacity either to appreciate the wrongfulness of his conduct, or to conform his conduct to the requirements of law."

The charges against defendant and Schilling were tried jointly. Had defendant attempted to introduce psychiatric evidence during the guilt phase of Schilling's trial, that evidence would have been inadmissible under *Steele, supra. Steele* was not decided when Stanton's trial was held but nevertheless prevents us from holding that psychiatric evidence should have been admitted in the first phase of that trial. No attempt has been made to predicate error on the fact that Stanton was tried jointly with Schilling. We conclude that defendant's second contention has no merit.

Defendant further contends in this connection that because the jury was instructed that a reasonable person intends all of the natural, probable and usual consequences of his acts, he was entitled to present evidence that Schilling was not a reasonable person acting deliberately. Defendant argues that if he could rebut the presumption as to Schilling's intent, he should not be held liable for the natural and probable consequences of Schilling's acts. We reject his argument. Defendant made no attempt to offer the evidence he claims he had a right to present.

*By the Court.*—Order affirmed.