STATE of Wisconsin, Plaintiff-Respondent,

v.

Jesse WERLEIN,† Defendant-Appellant.

Court of Appeals

*No. 86–0470–CR. Submitted on briefs October 14, 1986.—
Decided January 20, 1987.*

(Also reported in 401 N.W.2d 848.)

---

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

---

For defendant-appellant, Jesse W. Werlein, briefs were submitted by *C. William Foust*, of *Smoler & Albert, S.C.*, of Madison.

For plaintiff-respondent, State of Wisconsin, a brief was submitted by *Bronson C. La Follette*, attorney general, and *Marguerite M. Moeller*, assistant attorney general.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. Jesse Werlein appeals a judgment convicting him of attempted first-degree murder by use of a dangerous weapon. Werlein argues that the

trial court improperly struck expert witness testimony regarding his mental condition. Werlein also contends that the trial court erred by admitting opinion testimony as to the noninvolvement of another individual in the crime, refusing to grant a mistrial after the state commented on his failure to testify, and failing to instruct the jury on a lesser-included offense. We conclude that Werlein's latter contentions are without merit. However, because the trial court erroneously struck expert testimony and precluded the jury from determining whether Werlein was responsible for the crime, we reverse and remand for a new trial.

In July, 1984, Gary Sol was shot and wounded by an assailant. Jesse Werlein was eventually charged with attempting to murder Sol by use of a dangerous weapon. Werlein pled not guilty and not guilty by reason of mental disease or defect to the charge. Under the provisions of sec. 971.175, Stats., the trial was bifurcated.

At the guilt phase of the trial, the state demonstrated that Werlein had driven with an acquaintance, Kevin Bridges, to Sol's trailer home at approximately 2 a.m. Werlein ordered Bridges to tell the man in the trailer that they had car trouble. Werlein was armed with a semi-automatic rifle and when Sol approached the car, he saw the rifle and fled. Werlein fired twenty-five to thirty shots at Sol and Sol was struck in the back and arm, and his pelvic bone was fractured. Over defense counsel's objection, Deputy Sheriff Ronald Martinson testified that Richard Larabee, whom Sol had initially identified as the assailant, was not involved in the crime. The jury returned a guilty verdict.

At the responsibility phase of the trial, Werlein called a psychiatrist, Dr. Albert Lorenz. Lorenz testified that Werlein suffers from an organic brain dysfunction, an antisocial personality disorder, and delusions. He stated that Werlein "due to hereditary or suffocation illness ... does not have a proper function of his brain ...." That as a result, Werlein rotates images and constantly distorts words and "that's why he can't read properly and that is why he doesn't listen and he doesn't understand what you're saying all the time ...."[1] Lorenze stated that Werlein was "wrapped up in a delusional system of his own and even though he knew right from wrong, ... he believed this so much that he was compelled to act it out and that what he did was a product of the diagnosis. ..." According to Lorenz, Werlein was "living his delusion."

Lorenz testified that Werlein's mental disease of antisocial personality was evinced by much more than repeated criminal or antisocial conduct. This included an inability to handle work, squandering money, lack of attachment to people or groups, and reckless behavior. Lorenz stated that Werlein has no personality of his own, cannot plan for the future, and follows others much like a little child would. Lorenz concluded that as a result of Werlein's illness, he could not conform his conduct to the requirements of law.

---

[1] Dr. Lorenz testified:

They rotate images. Their basic knowledge then becomes distorted. He has a visual distortion of images and gets it all flat or feels it's nondimensional and he is in and out of it frequently. ... It's like putting the wrong letters in a computer, that they learn the letter "s" and it's distorted to look like an "e" or they change phrases around. They read things backwards ....

The state moved to strike Lorenz's testimony claiming it to be irrelevant and incompetent. The trial court agreed, struck the testimony and, because this was the only evidence presented on this issue, excused the jury. *See State v. Leach*, 124 Wis. 2d 648, 659–64, 370 N.W.2d 240, 247–49 (1985).

Werlein argues that the trial court erred by striking Lorenz's testimony and precluding the jury from considering whether he was mentally responsible for the crime. The trial court concluded that Lorenz's testimony demonstrated that Werlein was suffering from a disease manifested only by repeated criminal or otherwise antisocial conduct which was excluded as a defense under sec. 971.15(1), (2), Stats. These sections provide:

> (1) A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacked substantial capacity either to appreciate the wrongfulness of his conduct or conform his conduct to the requirements of law.

> (2) As used in this chapter, the terms "mental disease or defect" do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct.

The state urges us to sustain the trial court's conclusion and relies on *Simpson v. State*, 62 Wis. 2d 605, 215 N.W.2d 435 (1974). In *Simpson*, our supreme court refused to include an "antisocial personality disorder" as a mental disease or defect within the meaning of sec. 971.15. The court reasoned that to encompass such a disorder within the definition of mental disease or defect would be to abolish the sec. 971.15(2) provision that "an abnormality manifested

only by repeated criminal or otherwise antisocial conduct" was not a mental disease or defect. *Id.* at 612, 215 N.W.2d at 439.

Whether a statutory provision applies to a particular set of facts is a question of law. *State ex rel. Schaeve v. Van Lare*, 125 Wis. 2d 40, 45, 370 N.W.2d 271, 274 (Ct. App. 1985). The interpretation of a statute is also a question of law. *P.A.K. v. State*, 119 Wis. 2d 871, 876, 350 N.W.2d 677, 680 (1984). On review, questions of law are decided independently without deference to the trial court's decision. *Id.* The primary goal of statutory construction is to determine and give effect to the legislature's intent. *Id.* at 878, 350 N.W.2d at 681. In making this determination, a court first looks to the language of the statute itself. *Id.* If the language is unambiguous, no judicial rule of construction is permitted, and a court must give effect to the statute's plain meaning. *City of Milwaukee v. Linder*, 98 Wis. 2d 624, 632, 297 N.W.2d 828, 832 (1980).

Section 971.15(2) states that "'mental disease or defect' do not include an abnormality manifested *only* by repeated criminal or otherwise antisocial conduct." [Emphasis added.] The use of the word "only" indicates a legislative intent to exclude from the definition of a mental disease or defect those disorders that are manifested solely by repeated criminal or otherwise antisocial conduct. Here, Lorenz's diagnosis of Werlein's condition went beyond that of a mere antisocial personality disorder manifested only by repeated criminal or otherwise antisocial conduct.

Lorenz identified a variety of different manifestations of Werlein's illness other than criminal or

451

antisocial conduct. Lorenz opined that Werlein suffered from an organic brain dysfunction, delusions, and that he was severely mentally ill. Lorenz testified that Werlein rotated images and was unable to listen, read, understand, handle work, make attachments to people, or plan for the future. Lorenz concluded that Werlein's condition prevented him from conforming his conduct to that required by law. This diagnosis goes far beyond that of an abnormality manifested only by repeated criminal or otherwise antisocial conduct.

*Simpson* is not controlling. The evidence of the defendant's condition in that case differs dramatically from Werlein's described condition.[2] In *Simpson*, the evidence was not sufficient to bring the defendant under the provisions of 971.15(1) because there was no testimony that the defendant could not distinguish right from wrong or conform his conduct to that required by law. In the instant case, Lorenz's testimony demonstrates that Werlein falls within the provisions of subsec. (1). The inquiry is whether sec. 971.15(2) removes him from the provisions of subsec. (1) as a matter of law.

The *Simpson* court stopped short of holding that a diagnosis of antisocial personality was insufficient to raise the issue of the defendant's mental responsibility

[2]In *Simpson*, 62 Wis. 2d at 612, 215 N.W.2d at 438–39, a psychiatrist testified that Simpson was suffering from an antisocial personality disorder defined as a

> person who did not learn by experience, who grew up in a kind of environment where the behaviors of that person were viewed as wrong, as unacceptable, and yet the person would act out toward other people, doing illegal or immoral kinds of things with very little sense of conscience.

in every case. Rather the court concluded that, under the facts of that case, Simpson's disorder was not a mental disease or defect as defined by statute. *Id.* at 611–12, 215 N.W.2d at 438–39.

We do not construe *Simpson* to exclude every diagnosis of an antisocial personality disorder from the definition of mental disease or defect. Section 971.15 was drafted so as to define within broad terms the considerations under which a defendant would not be held responsible for his criminal conduct. The statute specifically refrains from resorting to labels that would place a defendant's disorder in a certain category and then have such categorization determine the outcome of the inquiry.

In enacting sec. 971.15, the legislature could have excluded antisocial personality disorders as a mental disease or defect if it wished to do so. However, the legislature refrained from doing so and instead permitted a case-by-case determination to be made as to whether a specific disorder rose to the level of a mental disease or defect. By so doing, the legislature evinced its intent that categorization and labels placed on a disorder are not to be determinative of a defendant's responsibility for a crime.

Many states, including Wisconsin, have attempted to deal with the complex question of when a defendant's mental condition will absolve the defendant from responsibility for his criminal conduct. Wisconsin has chosen to recognize that certain mental conditions will be a defense to criminal responsibility but has also chosen to exclude from those conditions sociopathic personalities that are evinced only by criminal or other antisocial conduct. Medical diagnoses do not fit neatly within the requirements of law, nor do the requirements of law embrace or embody the

453

nomenclature of the *Diagnostic and Statistical Manual* of mental disorders. These conflicts are to be reconciled at a jury trial by the citizens selected for this most important duty.

On the basis of Lorenz's testimony, sufficient credible evidence was introduced to raise the issue of Werlein's responsibility for the crime and to submit this issue to the jury. *See Leach*, 124 Wis. 2d at 259–64, 370 N.W.2d at 247–49; *see also State v. Sarinske*, 91 Wis. 2d 14, 47–48, 280 N.W.2d 725, 740 (1979). We therefore conclude that the trial court erred by failing to submit this matter to the jury for their determination. Werlein is entitled to a new trial.

The state contends that a retrial may be limited only to determining the responsibility issue. This issue was addressed in *State v. Koput*, 135 Wis. 2d 195, 400 N.W.2d 15 (1986). In *Koput*, the court concluded that when a jury trial was had in both phases of the trial and a retrial was ordered on remand due to an error in one phase, a defendant is entitled to a new trial on both the guilt and the responsibility issues. *Id.* at 13. We are constrained to follow that holding and direct a new trial on both issues.

Werlein contends that several other errors occurred in the guilt phase of the trial. Because addressing these alleged errors may be helpful in the retrial, we will examine his contentions.

Werlein argues that the trial court erred by permitting Deputy Sheriff Martinson to testify that Richard Larabee was not involved in the shooting of Gary Sol. Werlein first asserts that this evidence was inadmissible hearsay. *See* sec. 908.02, Stats. Alternatively, he maintains that this was opinion testimony not "rationally based on the perception of the wit-

454

ness" nor "helpful to a clear understanding of his testimony or the determination of a fact in issue" and so invaded the province of the jury. Section 907.01, Stats. The state argues that Martinson's testimony was presented not to prove its truthfulness but, rather, to describe the process that led to Larabee's arrest and later release. We conclude that the admission of this evidence was harmless error.

Martinson's testimony went beyond the events leading to Larabee's arrest and later release. Martinson testified that as a result of his investigation and after "speaking with many people," he concluded that Larabee was not involved in the crime. This conclusion was based on statements others made to Martinson and was introduced for its truthfulness, that is, that Werlein and not Larabee shot Sol. As such, it was hearsay and inadmissible because it was based upon out-of-court statements as to Larabee's noninvolvement in the crime. Section 908.02, Stats. Nonetheless, the admission of this testimony was harmless error.

■ The test for determining if an error is harmless is whether there is a reasonable possibility that the error contributed to the conviction. *State v. Dyess*, 124 Wis. 2d 525, 542–43, 370 N.W.2d 222, 231–32 (1985). The beneficiary of the error bears the burden of proving no prejudice. *Id.* at 543, 370 N.W.2d at 232.

■ The admission of Martinson's testimony did not prejudice Werlein. Neither the facts presented at trial nor any defense theory suggested that Larabee, rather than Werlein, was involved in the assault on Gary Sol. Werlein did not contend that he was mistakenly identified as the assailant. To the contrary, Werlein's defense was primarily based on lack of intent to kill

Sol. The state introduced unrefuted evidence that Werlein had shot Sol. Under these circumstances, there is no reasonable probability that the trial court's error contributed to the jury's finding of guilt.

Next, Werlein contends that the state impermissibly commented in its closing argument on his failure to testify and so infringed on his fifth amendment right to remain silent. The prosecutor stated that if the reason Werlein went to Sol's home was because Sol owed him money for drugs, "don't you think we'd know about it, don't you think that evidence would have been presented." The prosecutor also stated:

> [T]here is no evidence that this defendant knows Gary Sol. Gary Sol testified that he doesn't know him, never heard his name before. If there is evidence to that effect, don't you think you'd hear about it, don't you think you'd know about it.

Werlein argues that such references are improper, indirect comments on his failure to take the stand. We disagree.

■ The test for determining whether remarks are directed to a defendant's failure to testify is whether "the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *State v. Johnson*, 121 Wis. 2d 237, 246, 358 N.W.2d 824, 828 (Ct. App. 1984) (quoting *Bontempo v. Fenton*, 692 F.2d 954, 959 (3d Cir. 1982), *cert. denied*, 460 U.S. 1055 (1983)). Questions about the absence of facts in the record need not be taken as a comment on a defendant's failure to testify. *Id.*

Here, the substance of the prosecutor's comments was that there was no evidence to indicate either that Werlein went to Sol's house to collect money owed him for drugs or that the two were previously acquainted. Such evidence could have come from a number of sources other than Werlein. Further, the prosecutor's comments were made in rebuttal to defense counsel's suggestion that these were legitimate explanations for the events leading to the shooting. Based upon the totality of the circumstances, the prosecutor's comments were not an impermissible reference to Werlein's failure to testify.

Finally, Werlein argues that the trial court erred by failing to instruct the jury on the lesser-included offense of endangering safety by conduct regardless of life. Section 941.30, Stats. Werlein concedes that he did not request this instruction but maintains that it was "plain error" not to so instruct the jury. *See State v. Felton*, 110 Wis. 2d 485, 513, 329 N.W.2d 161, 174 (1983); Wis JI—Criminal SM-6 at 11–12 (1980). We disagree.

The submission of a lesser-included offense instruction is proper only when the evidence reasonably supports both acquittal on the greater charge and conviction on the lesser offense. *Leach*, 124 Wis. 2d at 675, 370 N.W.2d at 254. In making this determination, a court is to view the evidence in a light most favorable to the defendant. *Id.* at 675–76, 370 N.W.2d at 254.

Even viewing the evidence in a light favorable to Werlein, the evidence does not support instructing the jury on the lesser-included offense of endangering

safety by conduct regardless of life. Werlein was charged with attempted first-degree murder. Sections 939.32(1) and 940.01, Stats. Under this charge, the state had to demonstrate that Werlein attempted to kill Sol and that he did so intentionally. *Id.* The evidence demonstrated that Werlein shot Sol with a semi-automatic rifle at close range. The evidence also demonstrated that Werlein fired approximately twenty-five to thirty shots at Sol as he attempted to flee the scene. Sol was struck by several of the shots and severely injured. Under this evidence, no reasonable grounds exist to find that Werlein intended only to endanger Sol's safety rather than to kill him. Consequently, the trial court did not err by failing to instruct on the lesser-included offense. *See State v. Stanton,* 106 Wis. 2d 172, 182–83, 316 N.W.2d 134, 139–40 (Ct. App. 1982).

*By the Court.*—Judgment reversed and cause remanded.

CANE, P.J. *(dissenting).* My dissent is only to that portion of the opinion holding that it was error to strike Dr. Lorenz's testimony. It was not error. Under *Simpson,* "antisocial personality disorder" is excluded from the definition of "mental disease or defect" under sec. 971.15(2). *Simpson,* 62 Wis. 2d at 612, 215 N.W.2d at 439. Lorenz's diagnosis of Werlein as suffering from an antisocial personality disorder precludes Werlein from using the mental responsibility defense.

More importantly, after reviewing Lorenz's testimony in a light most favorable to the defense, I would conclude as a matter of law that Werlein was not

suffering from any mental disease or defect such that he lacked substantial capacity either to appreciate the wrongfulness of his conduct or conform his conduct to the requirements of law. Section 971.15(1), Stats. Whether certain facts fulfill a particular legal standard is a question of law. *Department of Revenue v. Exxon Corp.*, 90 Wis. 2d 700, 713, 281 N.W.2d 94, 101 (1979), *aff'd*, 447 U.S. 207 (1980).

Lorenz used the term "organic dysfunction" to mean that when a person has learned something wrong, it will remain wrong in the person's mind unless it is corrected early in life. He also calls this an "attention deficit." In Lorenz's opinion, Werlein's behavior is a product of the antisocial personality disorder created early in childhood by attention deficits. Simply stated, his behavior is a result of his environment. Werlein does not have any hallucinations or retardation. His EEG, CAT-scan, and electromyography test results were all within the normal limits indicating that he had no neurological symptoms. He is intelligent, but compulsive. He is capable of appreciating right from wrong but, according to Lorenz, because of an attention deficit during childhood, he has a "lack of judgment" in conforming his conduct to the requirements of the law.

Lorenz describes the common symptoms of the antisocial personality disorder as people who seldom hold a job, are not loyal to any person, group, code or religion. They basically have an undeveloped conscience and they have no super ego. This is all founded on the theory that the "disorder" started early in life and remained uncorrected. Consequently, the sufferer becomes a product of his or her environment.

The result is that persons such as Werlein are able, but fail to accept the social norms with respect to

459

legal behavior. I suspect that a "spoiled brat" who turns to crime as an adult would fit Lorenz's description of a person with an antisocial personality disorder unable to conform his conduct to the requirements of law. Also, a person who is raised in a criminal environment would probably fall within a similar diagnosis. As Lorenz states, since Werlein is over the age of eighteen, his disorder is no longer termed an attention deficit disorder, but rather is termed an antisocial personality disorder.

Wisconsin has not, and should not, recognize this type of "disorder" as a legal defense under sec. 971.15. The trial court therefore correctly refused to recognize Lorenz's diagnosis of Werlein as one falling under sec. 971.15(1). Rather, it correctly reasoned that the disorder was an abnormality as excluded from the mental disease or defect defense by sec. 971.15(2).