STATE of Wisconsin, Plaintiff-Respondent,†

v.

Gerald Collie IVY, Jr., Defendant-Appellant.

Court of Appeals

*No. 83-371-CR. Submitted on briefs September 15, 1983.—Decided October 25, 1983.*

† Petition to review granted.

For the defendant-appellant the cause was submitted on the briefs of *Margaret A. Maroney,* assistant state public defender, of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, with *Thomas J. Balistreri,* assistant attorney general of counsel, of Madison.

Before Wedemeyer, P.J., Decker and Moser, JJ.

MOSER, J. Gerald Collie Ivy, Jr. (Ivy) appeals from a judgment of conviction for armed robbery—party to a crime in violation of secs. 943.32(1)(a) and (2) and 939.05, Stats., and for injury by conduct regardless of life—party to a crime in violation of secs. 940.23 and 939.05. Ivy raises five issues on appeal: (1) whether the trial court erred in refusing to instruct the jury that a fact which has been stipulated to by the parties must be accepted as conclusively proven; (2) whether the trial court's instructions on liability for aiding and abetting were erroneous insofar as the jury was not told that the shooting victim's injury must be a natural, probable consequence of the intended crime of armed robbery; (3) whether the jury instructions were constitutionally deficient in that they failed to inform the jury that it must find that Ivy was aware that the principals were armed; (4) whether the trial court erred in not submitting Ivy's proposed instruction on the issue of identification; and (5) whether the evidence was insufficient to sustain the convictions. Because we conclude that the jury instructions were constitutionally deficient in that they failed to inform the jury that it must find Ivy was aware that the principals were armed, we reverse.

On August 19, 1981, two men entered a Clark station on North 27th Street in Milwaukee and shot and wounded an employee, Alvin Harrison (Harrison), and took an unknown amount of money. Neither of these individuals was apprehended by the police.

Roosevelt Hutchison (Hutchison), a thirteen-year-old boy from the neighborhood, and his sixteen-year-old brother were across the street from the service station during the armed robbery. The corner where they stood had no street light. While his brother was a few feet away talking to someone, Hutchison talked to a man whom he later identified as Ivy. Hutchison heard two shots from the station and observed two men exiting the .

building. When Hutchison asked the man if he knew the other two, the man told him to shut up. As the two armed robbers ran down the street, the man ran in the same direction.

Ivy was arrested at his home at 2 a.m. on August 20, 1981. Ivy's alibi was that he had been at his sister's and brother-in-law's house watching "The Rockford Files" on television at the time of the robbery. This was corroborated at trial by the testimony of Ivy's sister and brother-in-law.

Because Ivy's sister, who has a learning disability, gave confusing testimony as to what time "The Rockford Files" began, the district attorney agreed to stipulate that the program began at 10:30 p.m. The jury was informed of the stipulation at the close of trial but was not instructed, contrary to defense counsel's request, that it had to accept the stipulated fact as conclusively proven.

Defense counsel requested a tailored instruction on the issue of identification. The trial court refused to give it, stating that Wis J I—Criminal 141 was adequate.

The jury returned a verdict of guilty on both counts. Ivy was sentenced to eight years on the armed robbery —party to a crime conviction and five years (to be served concurrently) on the conviction for injury by conduct regardless of life—party to a crime.

At a hearing on motion for postconviction relief Ivy raised three of the issues concerning jury instructions that he raises in this appeal. The trial court rejected his arguments and ordered Ivy's postconviction motion denied. This appeal followed.

## EFFECT OF STIPULATION

Ivy contends the trial court erred in refusing to instruct the jury that a fact to which the parties have stipulated must be accepted as conclusively proven. We

hold that the trial court's refusal was erroneous but that it was harmless error.

Under Wis J I—Criminal 162 a jury is advised that it must accept a stipulated fact as conclusively proven.[1] Old, but still good, Wisconsin case law supports this instruction.[2] Of course, a trial court may refuse to accept a proposed stipulation and may then make findings contrary to its terms,[3] but that did not happen in the instant case.

A trial court has broad discretion as to jury instructions.[4] If the instructions given adequately cover the law applicable to the facts, this court will not find error in the refusal to give special instructions.[5] However, it is also the rule that where a correct instruction upon a material point is timely requested, and there is evidence in the record to support it, it is error to refuse it unless an equivalent instruction is given.[6] Moreover, a defendant has the right to an instruction on his or her theory of defense.[7]

---

[1] Wis J I—Criminal 162 reads as follows: "The district attorney and the attorney for defendant have stipulated or agreed to the existence of certain facts, and you must accept these facts as conclusively proved."

[2] "[Under a stipulation as to agreed facts] the rights of the parties must be determined upon the facts stipulated as if they had been found by special verdict." *Riley v. State Bank of DePere,* 223 Wis. 16, 20, 269 N.W. 722, 724 (1936).

[3] *Birts v. State,* 68 Wis. 2d 389, 395–96, 228 N.W.2d 351, 355 (1975).

[4] *State v. Higginbotham,* 110 Wis. 2d 393, 403, 329 N.W.2d 250, 255 (Ct App. 1982).

[5] *Id.* at 403–04, 329 N.W.2d at 255.

[6] *Sambs v. City of Brookfield,* 66 Wis. 2d 296, 304, 224 N.W.2d 582, 587 (1975).

[7] *State v. Pruitt,* 95 Wis. 2d 69, 81, 289 N.W.2d 343, 348 (Ct. App. 1980) (relying on *State v. Davidson,* 44 Wis. 2d 177, 191, 170 N.W.2d 755, 763 (1969)).

In the instant case the timely requested instruction was material to Ivy's alibi that he was at his sister's house watching "The Rockford Files" on television when the armed robbery occurred at approximately 11 p.m. Under the requested instruction the jury would have had to accept as conclusively proven that "The Rockford Files" aired from 10:30 p.m. to 11:30 p.m. on the day of the crime.

Since the requested instruction was material to Ivy's theory of defense and there was an evidentiary basis for it (the parties' stipulation), it was error for the trial court to refuse to give the instruction. The mere fact that the refusal was erroneous, however, does not *ipso facto* make it prejudicial.[8] Jury instructions are to be considered as a whole, and the test of prejudice is whether it is probable that the jury was misled by the erroneous instruction.[9]

It is highly unlikely the jury was misled by the trial court's omission. The district attorney and the defense counsel agreed in the presence of the jury that "The Rockford Files" began at 10:30 p.m. and ended at 11:30 p.m. All witnesses but one, Ivy's sister, testified that the program began at 10:30 p.m. Ivy's sister thought the program began at 11 p.m., but she also testified that Ivy had come to her house while the Channel 6 late evening news was still on and that "The Rockford Files" started right after the news. It is common knowledge that the late evening news of the three commercial network affiliates in Milwaukee airs from 10 p.m. to 10:30 p.m. With or without an instruction on the effect of the parties' stipulation, we think the jury was bound to conclude

[8] *See Westfall v. Kottke,* 110 Wis. 2d 86, 107, 328 N.W.2d 481, 492 (1983).
[9] *Id.*

that "The Rockford Files" began at 10:30 p.m. and ended at 11:30 p.m. Accordingly, no prejudice resulted from the trial court's failure to instruct on the effect of the stipulation.

## JURY INSTRUCTIONS

Ivy asserts that the trial court's instruction on aiding and abetting liability was erroneous because it failed to advise the jury that to convict Ivy for injury by conduct regardless of life—party to a crime it would have to find that the injury of Harrison was a natural and probable consequence of the planned crime. We agree that the jury should have been told it had to find that the shooting of Harrison was a natural and probable consequence of the planned crime, but we hold that this omission was harmless error under *State v. Asfoor.*[10]

One who intentionally aids and abets the commission of a crime is responsible not only for the intended crime, if committed, but also for other crimes committed as a natural and probable consequence of the intended criminal acts.[11] In *Asfoor* the supreme court held that, in a trial on a charge of negligent use of a weapon—party to a crime, the jury should have been instructed that, in order to convict, it must find that the negligent shooting was a natural and probable consequence of the intended crime of battery.[12] The error, however, was held to be harmless because, under the factual circumstances, it was clear that the shooting was a natural, probable consequence of the intended battery.[13]

---

[10] *State v. Asfoor,* 75 Wis. 2d 411, 249 N.W.2d 529 (1977).

[11] *State v. Cydzik,* 60 Wis. 2d 683, 696–97, 211 N.W.2d 421, 429–30 (1973).

[12] *Asfoor, supra* note 10, at 432, 249 N.W.2d at 538.

[13] *Id.*

Ivy argues that in this case the omitted instruction constitutes plain error which affected his substantial rights. His argument, if valid, would accomplish two things: (1) it would obviate the waiver rule insofar as Ivy never raised this issue in the lower court; and (2) it would distinguish this case from *Asfoor* and thus mandate a reversal on the basis of the omitted instruction. Ivy distinguishes *Asfoor* insofar as the evidence in that case showed that the aider and abettor had direct knowledge, from statements made in his presence and from his knowledge of the presence of weapons in his car, of the principal actor's intent to shoot the victim.[14] In this case, on the other hand, Ivy argues there was no evidence to show that he was aware that the principal actors were armed or that statements were made in his presence which would have communicated to him that a gun would be involved in the robbery.

It is not the law in Wisconsin that an aider and abettor cannot be guilty unless it is shown that the crime which was committed was the specific crime which the aider/abettor intended be committed.[15] As stated above, the aider and abettor can also be held responsible for any act which was the natural and probable consequence of the intended crime.[16]

The aider and abettor's knowledge or mental state is relevant to the planned or intended crime, not to the natural and probable consequences of that crime: "[T]he aider and abettor in a proper case is not only guilty of the particular crime that *to his knowledge* his confederates are contemplating committing, but he is also lia-

---

[14] *Id.* at 420–22, 249 N.W.2d at 533.

[15] *Id.* at 427, 249 N.W.2d at 536; *Cydzik, supra* note 11, at 696–97, 211 N.W.2d at 429–30.

[16] *Asfoor, supra* note 10, at 430, 249 N.W.2d at 537; *Cydzik, supra* note 11.

ble for the natural and reasonable or probable consequences of any act that he *knowingly aided or encouraged.*"[17] (Emphasis added).

The state need only prove that the accused aider and abettor intended to aid and abet the particular crime of which he had knowledge. The state does not have to prove the aider and abettor's intent to commit a consequential crime as long as that crime was a natural and probable consequence of the intended crime. Ivy does not argue that the shooting and injury of Harrison was not a natural, probable consequence of the armed robbery of the gas station. Nor do we think a reasonable jury would have so found, with or without the required instruction. Accordingly, the omission of the instruction was harmless error.

Ivy's third argument is that the jury instructions were constitutionally deficient because they failed to inform the jury that it must find that Ivy was aware that the principals were armed in order to convict him of aiding and abetting armed robbery. While, as discussed above, proof of *mens rea* is not required for conviction on an offense which was the natural and probable consequence of an intended crime to which the defendant was a party, proof of intent is required for the offense of aiding and abetting the intended crime:

939.05 Parties to crime.

(1) Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime . . .

(2) A person is concerned in the commission of the crime if he:

. . . .

(b) *Intentionally* aids and abets the commission of it; . . . . (Emphasis added).

---

[17] *Id.* at 431, 249 N.W.2d at 537–38 (quoting *People v. Durham,* 449 P.2d 198, 204 *cert. denied,* 395 U.S. 968 (1969).

We do not think that armed robbery is a natural and probable consequence of robbery. Therefore, to intentionally aid and abet the commission of armed robbery, the aider/abettor must have some awareness that the principals are armed: "[D]efendants may be found guilty of being concerned in the commission of a crime if, between them, they perform all the necessary elements of the crime *with mutual awareness of what the other is doing.*"[18] (Emphasis added).

The due process clause of the fourteenth amendment protects an accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute, and every element of, the crime with which he is charged.[19] Ivy's awareness that the principals were armed was a fact necessary to constitute the crime of intentionally aiding and abetting armed robbery, and the jury should have been so instructed. This deficiency in instructions raises state and federal constitutional questions relative to the state's burden of proof beyond a reasonable doubt and the defendant's right to a unanimous verdict.[20] Ivy's failure to object at trial, therefore, does not preclude his raising the issue on appeal.[21]

Before a constitutional error can be held harmless, the reviewing court must be able to declare a belief that it was harmless beyond a reasonable doubt.[22] We are un-

---

[18] *Roehl v. State,* 77 Wis. 2d 398, 407–08, 253 N.W.2d 210, 214 (1977).

[19] *Jackson v. Virginia,* 443 U.S. 307, 316 (1979); *In re Winship,* 397 U.S. 358, 364 (1970).

[20] *State v. Baldwin,* 101 Wis. 2d 441, 446 n 3 and accompanying text; 304 N.W.2d 742, 746 n 3 and accompanying text (1981).

[21] *Id.*

[22] *Chapman v. California,* 386 U.S. 18, 24 (1967); *State v. Zellmer,* 100 Wis. 2d 136, 150, 301 N.W.2d 209, 216 (1981); *State v. Jennaro,* 76 Wis. 2d 499, 509, 251 N.W.2d 800, 805 (1977).

able to conclude beyond a reasonable doubt that the omitted instruction did not contribute to the guilty verdict against Ivy. Therefore, we reverse on the basis of this error.

Ivy's final claim of error in his jury instructions is that the trial court's refusal to submit Ivy's proposed instruction on the issue of identification deprived him of his due process right to an instruction on his theory of defense. Our supreme court has twice approved, in cases in which the identification issue was significant, the use of the standard jury instruction on identification, Wis J I—Criminal 141.[23] In light of these decisions, we do not find Wis J I—Cirminal 141 to have been inadequate to effectively put forth Ivy's theory of defense.

## SUFFICIENCY OF EVIDENCE

Finally, Ivy argues that the evidence at trial was insufficient to sustain his convictions for party to the crimes of armed robbery and injury by conduct regardless of life. As we are reversing and remanding this case for a new trial, we find it unnecesary to reach this issue.

*By the Court.*—Judgment and order reversed and cause remanded.

---

[23] *Hampton v. State*, 92 Wis. 2d 450, 462–64, 285 N.W.2d 868, 874–75 (1979); *State v. Williamson*, 84 Wis. 2d 370, 391–94, 267 N.W.2d 337, 347–48 (1978).