STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Gerald Collie IVY, Jr., Defendant-Appellant.

Supreme Court

*No. 83–371–CR.  Argued April 26, 1984.—Decided June 27, 1984.*

(Also reported in 350 N.W.2d 622.)

For the plaintiff-respondent-petitioner the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For the defendant-appellant there was a brief and oral argument by *Margaret A. Maroney,* assistant state public defender.

WILLIAM A. BABLITCH, J.    The State of Wisconsin seeks review of a decision reversing a judgment convicting Gerald Collie Ivy, Jr. of aiding and abetting armed robbery, and of aiding and abetting injury by conduct regardless of life.

The court of appeals held that because an armed robbery cannot under any circumstances be a natural and probable consequence of a robbery, a person convicted as an aider and abettor to an armed robbery must have had actual knowledge that the principals would be armed. We hold that, depending on the facts and circumstances of a given case, an armed robbery can be a natural and probable consequence of a robbery, and, if so, the aider and abettor need not have had actual knowledge that the principals would be armed. We also hold that the jury instructions given in this case were not erroneous. We further hold that the court of appeals erred in not deciding the sufficiency of evidence issue that the defendant raised in that court. We therefore reverse and remand to the court of appeals with directions.

*BACKGROUND*

On the evening of August 19, 1981, two men entered a gas station in Milwaukee. One of the men shot and wounded an employee who worked at the gas station, and both men took some money from the station. The men were never apprehended by the police.

Roosevelt Hutchinson testified that on the evening of the armed robbery, he talked to a man standing across the street from the gas station where the armed robbery occurred. Hutchinson said that the man appeared nervous and kept looking behind him and turning his head from side to side. Hutchinson stated that the man said to himself, "Hurry up." Hutchinson also testified that he subsequently heard two shots and then observed two men fleeing the gas station with a money sack. Hutchinson said something to the man with whom he had previously spoken to the effect that he assumed the man knew what was going on, after which the man replied, "Shut up." As the two men ran down the street, the man with whom Hutchinson had spoken ran in the same direction. Hutchinson later identified the man with whom he had spoken as Gerald Collie Ivy, Jr.

The state filed a criminal complaint against Ivy on August 20, 1981. The complaint charged Ivy with armed robbery, party to a crime, contrary to secs. 943.32(1)(a) and (2) and 939.05, Stats., and for injury by conduct regardless of life, party to a crime, contrary to secs. 940.23 and 939.05. Sections 943.32(1)(a) and (2), and 939.05 are cited below.[1] At trial, Ivy's defense was that

[1] Sections 943.32(1)(a) and (2), Stats., provide:

"**Robbery.** (1) Whoever, with intent to steal, takes property from the person or presence of the owner by either of the following means is guilty of a Class C felony:

"(a) By using force against the person of the owner with intent thereby to overcome his physical resistance or physical power of resistance to the taking or carrying away of the property; or

". . .

"(2) Whoever violates sub. (1) by use or threat of use of a dangerous weapon or any article used or fashioned in a manner to lead the victim reasonably to believe that it is a dangerous weapon is guilty of a Class B felony."

Section 939.05, Stats., provides in part:

he was not the lookout who Hutchinson saw and spoke with on the evening of the armed robbery. Ivy presented an alibi that he was at his sister's and brother-in-law's house watching television during the time the armed robbery occurred.

The trial court's instructions to the jury included the pattern instruction on armed robbery, Wis. J.I.—Criminal, Vol. II, 1480, and the pattern instruction on party to a crime, aiding and abetting, Wis. J.I.—Criminal, Vol. I, 400A. The jury returned a verdict of guilty on both counts. Ivy subsequently filed a postconviction motion for a new trial, which the trial court denied.

Ivy appealed to the court of appeals. In a published decision, cited below,[2] the court of appeals held that armed robbery is not a natural and probable consequence of robbery; that in order for a defendant to be convicted of armed robbery as an aider and abettor, it must be shown that the defendant was aware that the principals who committed the armed robbery would be armed. Therefore, the court held that the trial court erred in not instructing the jury that Ivy's awareness that the principals who committed the armed robbery would be armed was a fact necessary to constitute the crime of

"Parties to crime. (1) Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although he did not directly commit it and although the person who directly committed it has not been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act.

"(2) A person is concerned in the commission of the crime if he:

"(a) Directly commits the crime; or

"(b) Intentionally aids and abets the commission of it; or

"(c) Is a party to a conspiracy with another to commit it or advises, hires, counsels or otherwise procures another to commit it. . . ."

[2] *State v. Ivy*, 115 Wis. 2d 645, 341 N.W.2d 408 (Ct. App. 1983).

intentionally aiding and abetting armed robbery. Because the court of appeals concluded that this error was not harmless, it reversed and remanded for a new trial.

The state subsequently filed a petition for review with this court which was granted.

The issues for review are:

(1) In order for a person to be convicted of aiding and abetting an armed robbery, must the aider and abettor have had actual knowledge that the principals would be armed with a dangerous weapon? We hold that, depending on the facts and circumstances of a given case, an armed robbery can be a natural and probable consequence of a robbery. Therefore, if an armed robbery is found to be a natural and probable consequence of a robbery, the aider and abettor need not have had actual knowledge that the principals would be armed with a dangerous weapon.

(2) Because the state tried this case on the theory that armed robbery was the intended crime (as distinguished from the armed robbery being a natural and probable consequence of robbery), did the jury instructions sufficiently advise the jury that it could not convict the defendant of aiding and abetting an armed robbery unless it found that the defendant knew or believed that the principals would be armed with a dangerous weapon? We conclude that the jury instructions were not erroneous.

(3) Did the court of appeals err in not deciding whether the evidence was sufficient to sustain Ivy's convictions? We conclude that it did.

## LIABILITY OF AIDER AND ABETTOR FOR ARMED ROBBERY

The court of appeals correctly stated that in Wisconsin an aider and abettor may be guilty not only of the par-

ticular crime that to his knowledge his confederates intend to commit, but also for different crimes committed that are a natural and probable consequence of the particular act that the defendant knowingly aided or encouraged. *State v. Ivy,* 115 Wis. 2d 645, 653–54, 341 N.W.2d 408 (Ct. App. 1983). The court also correctly noted that proof of intent is not required for conviction of the different offense if the offense was the natural and probable consequence of the intended crime to which the defendant was a party. However, the court stated: "We do not think that armed robbery is a natural and probable consequence of robbery." 115 Wis. 2d at 655. The court therefore held that to intentionally aid and abet the commission of armed robbery, the aider and abettor ". . . must have some awareness that the principals are armed. . . ." *Id.*

The state argues that the court of appeals erroneously held that a defendant can never be liable for aiding and abetting an armed robbery unless the defendant was aware that the principals would be armed. The court of appeals' holding was based on its conclusion that, as a matter of law, an armed robbery is not a natural and probable consequence of a robbery, no matter what the circumstances or facts are in a given case. Although the state concedes that the facts of this particular case might not be sufficient to support a finding that the armed robbery here was a natural and probable consequence of robbery, it argues that the facts of some cases could support a finding that a particular armed robbery was the natural and probable consequence of robbery. The state argues that if in a given case, the natural and probable means of committing the intended robbery would be the use of a dangerous weapon, the defendant would then have had *constructive* knowledge that a dangerous weapon would be used. In such cases, the state asserts that a defendant need not have had *actual* knowledge

that the principal was armed in order to be convicted of aiding and abetting an armed robbery. We agree.

Under secs. 939.05(1) and 939.05(2)(b), Stats., a person who intentionally aids and abets the commission of a crime may be charged with and convicted of committing that crime. The elements of aiding and abetting are that a person: (1) undertakes conduct, either verbal or overt action, that as a matter of objective fact aids another person in the execution of a crime; and (2) he or she desires or intends that his or her conduct will yield such assistance. *State v. Asfoor,* 75 Wis. 2d 411, 427, 249 N.W.2d 529 (1977).

This court has consistently held that ". . . one who intentionally aids and abets the commission of a crime is responsible not only for the intended crime, if it is in fact committed, but as well for other crimes which are committed as a natural and probable consequence of the intended criminal acts." *Asfoor,* 75 Wis. 2d at 430. *See State v. Cydzik,* 60 Wis. 2d 683, 696–97, 211 N.W.2d 421 (1973).

In *Cydzik,* the defendant and a companion were involved in an armed robbery of a supper club. During the robbery, the companion shot and killed a patron in the club. The defendant was charged with, and convicted of, armed robbery and of first-degree murder, party to a crime. The defendant argued that the evidence did not support his conviction of first-degree murder, party to a crime, because he did not intend to aid or assist in the murder that occurred during the armed robbery. This court disagreed, stating:

". . . legal intent may be inferred from conduct. One is presumed to intend natural and probable consequences of his act. Given two armed robbers, holding up a supper club . . . , it is entirely reasonable to infer on the part of each an intention to assist the other in the event that there is a shooting or killing as well as an intention

to assist the other in the emptying of the cash register." 60 Wis. 2d at 697. (Footnotes omitted.)

In *Asfoor,* the defendant drove two companions to a motel to see a man who one companion had said that he " 'wanted to see . . . get shot.' " 75 Wis. 2d at 420. When they arrived, the man came out of the motel, whereupon one of the defendant's companions shot the man. One of the crimes with which the defendant was charged and of which he was convicted was injury by negligent use of a weapon, party to a crime.

The defendant in *Asfoor* argued that the jury instruction on aiding and abetting was erroneous because it did not require the jury to find that he actually planned and intended to aid the specific crime charged. We disagreed, citing the following established principle of law:

". . . the aider and abettor in a proper case is not only guilty of the particular crime that to his knowledge his confederates are contemplating committing, but he is also liable for the natural and reasonable or probable consequences of any act that he knowingly aided or encouraged. Whether the act committed was the natural and probable consequence of the act encouraged and the extent of defendant's knowledge are questions of fact for the jury." 75 Wis. 2d at 431, quoting *People v. Durham,* 70 Cal. 2d 171, 181, 74 Cal. Rptr. 262, 268, 449 P. 2d 198, 204 (1969), *cert. denied* 395 U.S. 968, and 406 U.S. 971. (Citations omitted.)

The central issue raised in this case concerns whether a defendant charged with aiding and abetting an armed robbery must have had *actual knowledge* that the person who directly committed the armed robbery would be armed with a dangerous weapon before the defendant can be found guilty of the crime. Neither *Cydzik* nor *Asfoor* expressly addressed the issue of the liability of an aider and abettor given his or her knowledge or lack thereof of certain facts that made the conduct criminal.

The primary issue in both *Cydzik* and *Asfoor* concerned whether a defendant could be found guilty of aiding and abetting a crime that was the natural and probable consequence of the intended crime without a finding that the defendant actually intended to assist the commission of that crime. However, we conclude that the principles in *Cydzik* and *Asfoor* establishing the liability of an aider and abettor for a crime that was the natural and probable consequence of the intended crime are applicable in this case.

Here, the court of appeals correctly cited the applicable law in Wisconsin governing the liability of an aider and abettor. However, it erred in automatically concluding, based on that law, that armed robbery is not a natural and probable consequence of robbery. We conclude that depending on the facts and circumstances of a given case, armed robbery could be a natural and probable consequence of robbery; therefore, a defendant could be liable for aiding and abetting the armed robbery even though he or she did not actually know that the person or persons who directly committed the armed robbery were armed with a dangerous weapon.

Robbery is itself a violent crime involving the taking of a person's property against his or her will by the threat or actual use of force. *See* secs. 943.32(1)(a) and (1)(b), Stats. Because threatened or actual force is involved in a robbery, there are myriad factual situations in which it would be reasonable to find that an armed robbery that occurred was a natural and probable consequence of robbery. For example, if a person intends to rob an armored money truck, it is likely that the person would have to use a weapon during the robbery in order to successfully accomplish the robbery. Similarly, if a person intends to rob a bank or business that is guarded by armed security guards, it is likely that the person

would have to use a weapon to successfully effectuate the robbery. If a defendant in either example intended to aid the crime of robbery but actually knew that the person who directly committed the robbery planned to rob an armored money truck, or actually knew that the perpetrator planned to rob a bank guarded by armed security guards, and an armed robbery actually occurred, the defendant conceivably could be liable for the commission of the armed robbery even though he or she did not actually know that the person directly committing the robbery was armed with a dangerous weapon. Under those circumstances, the armed robbery could be considered a natural and probable consequence of robbery and, given the facts the defendant actually knew about the robbery he or she intended to assist, he or she would at least be on notice of the likelihood that the person who directly committed the robbery would be armed with a dangerous weapon and might use that weapon. Just as it was reasonable in *Cydzik* to infer intent on the part of the defendant to assist in the commission of the crime that actually occurred, it would be reasonable in the above examples to infer knowledge on the part of the aider and abettor that the principal was armed with a dangerous weapon.

As we recognized in *Asfoor*, whether an act committed was the natural and probable consequence of the act the aider and abettor encouraged, and the extent of his or her knowledge, are questions of fact for the jury. 75 Wis. 2d at 431, quoting *People v. Durham,* 70 Cal. 2d 171, 181, 74 Cal. Rptr. 262, 268, 449 P.2d 198, 204 (1969), *cert. denied* 395 U.S. 968 and 406 U.S. 971. (Citations omitted.) Thus, whether in a given case an armed robbery that was committed was a natural and probable consequence of a robbery that a person charged with aiding and abetting allegedly assisted, and the ex-

tent of that person's knowledge, are factual determinations that must be made by the jury in light of the facts of that case. If the *Asfoor-Cydzik* theory of liability of an aider and abettor is implicated in a particular case, the jury should be instructed that the defendant's liability as an aider and abettor extends to any crime that was committed as a natural and probable consequence of the intended criminal acts, as well as the crime the defendant knowingly aided and abetted. *See State v. Sharlow*, 110 Wis. 2d 226, 241, n. 13, 327 N.W.2d 692 (1983). Under those circumstances, a defendant could be liable for the commission of an armed robbery although he or she did not have actual knowledge that the principal was armed with a dangerous weapon.

## JURY INSTRUCTIONS

This case was *not* tried on the theory that the armed robbery was a natural and probable consequence of an intended robbery. Rather, the state conceded at oral argument that this case was tried on the theory that Ivy had actual knowledge (as opposed to constructive or inferred knowledge) that the men who robbed the gas station would be armed with a dangerous weapon, and that he was liable for the crime of armed robbery because that was the particular crime that he intentionally aided and abetted. The state therefore agrees that, in this case, before the jury could find Ivy guilty of aiding and abetting the armed robbery, it had to find that he actually knew that the men who robbed the gas station were armed with a dangerous weapon.

The state argues that the court of appeals erred in concluding that the jury instructions did not advise the jury that it could not convict the defendant of aiding and abetting an armed robbery unless it found that the defendant actually knew or believed that the robbery he assisted was committed by threat or use of a dangerous weapon. We agree.

In determining whether the instructions to the jury appropriately advised the jury of the applicable law, or whether any error in the instructions constitutes reversible error, this court has recognized that the instructions must not be judged in isolation, but must be considered as a whole. *See Barrera v. State,* 109 Wis. 2d 324, 330, 325 N.W.2d 722 (1982); *Moes v. State,* 91 Wis. 2d 756, 771, 284 N.W.2d 66 (1979). In viewing the instructions in this case as a whole, we conclude that a reasonable jury would have understood from the instructions that in order to convict Ivy of armed robbery, party to a crime, it must find that he intentionally aided and abetted the commission of armed robbery, and that, in order to do so, it had to find that Ivy knew or believed that the principals would be armed with a dangerous weapon.

As previously noted, the trial court gave the pattern Wisconsin jury instruction on liability of an aider and abettor. This court has approved that instruction as an accurate restatement of the applicable law. *See Cydzik,* 60 Wis. 2d at 698. In instructing the jury on the applicable law of aider and abettor liability, the trial court stated:

"A person intentionally aids and abets the commission of a crime when acting with *knowledge or belief* that another person is committing or intends to commit a crime, he knowingly either renders aid to the person who commits the crime or is ready and willing to render aid if needed and the person who commits the crime knows of his willingness to aid him." (Emphasis supplied.) *See* Wis. J.I.—Criminal, Vol. I, 400A.

The trial court also gave the pattern Wisconsin jury instruction on armed robbery, Wis. J.I.—Criminal, Vol. II, 1480, which included the following language:

"Armed robbery . . . is committed by one who with the intent to steal *and by use or threat of use of a dangerous weapon or an article used or fashioned in a man-*

*ner to lead the victim* to reasonably believe that it is *a dangerous weapon* commits one or both of the following two acts . . . Before the defendant may be found guilty of armed robbery, the state must prove by evidence which satisfies you beyond a reasonable doubt that there were present the following . . . elements of this offense . . . third, that the defendant, *while armed, with a dangerous weapon,* used force against the person in possession . . . fourth, that at the time of the taking and carrying away, *the defendant used a dangerous weapon. . . ."* (Emphasis supplied.)

Ivy argues that these instructions were insufficient to advise the jury that it had to find that Ivy knew that the men who entered the gas station would be armed because there was no connecting link between the aiding and abetting instruction and the armed robbery instruction. Because the aiding and abetting instruction only referred to "a crime" and "the crime," Ivy contends that the jury could have interpreted the aiding and abetting instruction to mean the following:

"A person intentionally aids and abets the commission of *an armed robbery* when acting with knowledge or belief that another person is committing or intends to commit *a robbery,* he knowingly either renders aid to the person who commits *the armed robbery* or is ready and willing to render aid if needed and the person who commits *the armed robbery* knows of his willingness to aid him." (Emphasis supplied.)

Ivy asserts that the jury may have convicted him of intentionally aiding and abetting armed robbery even though it thought that Ivy believed he was only assisting a robbery.

It clearly would have been advisable for the trial court to have provided a connecting link between the aiding and abetting instruction and the armed robbery instruction. An appropriate connecting link would have been to

substitute the words "armed robbery" for the references to "a crime" and "the crime" in the pattern jury instruction on the liability of an aider and abettor. However, we do not believe that the lack of a link between the two instructions was sufficient to have misled the jury or to have rendered the instructions erroneous. The jury was instructed that Ivy was charged with armed robbery, party to a crime. The jury then was instructed on the elements of armed robbery, including the element that the person committing the armed robbery was armed with a dangerous weapon. Finally, the jury was instructed that Ivy could be liable as an aider and abettor if he knew or believed that another person committed or intended to commit a crime, and he knowingly rendered aid to that person. From these instructions, a reasonable jury would have understood that Ivy would not be liable for aiding and abetting the armed robbery unless he knew or believed that the persons he assisted had committed or intended to commit an *armed* robbery. From these instructions, a reasonable jury could not have found Ivy guilty of aiding and abetting an *armed* robbery unless it found that Ivy knew that the principals would be armed with a dangerous weapon. Thus, the instructions, when considered as a whole, sufficiently conveyed to the jury the requirement that in order to find Ivy liable for aiding and abetting the armed robbery, it had to determine that he knew or believed that the persons he assisted committed or intended to commit an armed robbery and that in order to make that determination, it had to find that Ivy knew or believed that the principals would be armed with a dangerous weapon.

Ivy contends, however, that the jury instructions were inadequate because they contained an inaccurate definition of "intentionally" in the aiding and abetting instruction. As noted above, the jury was instructed that "A person intentionally aids and abets the commission of a

crime when acting with knowledge or belief that another person is committing or intends to commit a crime . . . ." Ivy argues that "intentionally" in this case means "knowledge of those facts which are necessary to make the crime an armed robbery, i.e., knowledge that the principals were armed."

As previously noted, this court consistently has approved the pattern jury instruction on aiding and abetting as an accurate restatement of the law. *Sharlow,* 110 Wis. 2d at 238–41; *Cydzik,* 60 Wis. 2d at 693. Intent for purposes of establishing liability as an aider and abettor is evidenced by knowledge or belief that a person is committing or intends to commit a criminal act, in this case, armed robbery. Based on the definition of "intentionally" in the pattern aiding and abetting instructions, and the definition of the elements of armed robbery contained in the pattern armed robbery instruction, a reasonable jury in this case would have concluded that in order to find that Ivy knew or believed that a person was committing or intended to commit an armed robbery, Ivy must have known or believed that the person committing the armed robbery would be armed with a dangerous weapon. Therefore, the definition of "intentionally" contained in the pattern aiding and abetting instruction was sufficient to fully advise the jury of the requirements for finding that Ivy intentionally aided and abetted the commission of the armed robbery.

Ivy also argues that the instructions were inadequate because they did not advise the jury that the elements of aiding and abetting are elements of the crime that must be proven beyond a reasonable doubt. We disagree.

In order to obtain a conviction, the state must prove every essential element of the crime charged beyond a

reasonable doubt. *Bautista v. State,* 53 Wis. 2d 218, 223, 191 N.W.2d 725 (1971). In this case, the trial court instructed the jury that the state had to prove beyond a reasonable doubt that the defendant was guilty. The jury also was instructed on the elements of the substantive offenses with which Ivy was charged as a party to a crime, which were armed robbery and injury by conduct regardless of life. The jury then was instructed that the state had to prove the existence of those elements beyond a reasonable doubt. Finally, the jury was instructed that a person who intentionally aids and abets the commission of a crime is guilty of the crime. From these instructions, a reasonable jury could not have found Ivy guilty beyond a reasonable doubt of committing the crimes with which he was charged (armed robbery, party to a crime, and injury by conduct regardless of life, party to a crime) unless it found that the state proved beyond a reasonable doubt the elements of armed robbery and of injury by conduct regardless of life, and that the state proved beyond a reasonable doubt that he aided and abetted the commission of those crimes. Therefore, the instructions, when read as a whole, sufficiently set forth the state's burden of proof.

## SUFFICIENCY OF EVIDENCE

In his appeal to the court of appeals, Ivy argued that the evidence was insufficient to support his convictions. However, the court of appeals did not address that issue. As previously noted, the court of appeals reversed and remanded for a new trial on the basis of its determination that an error in the jury instructions was not harmless. Because it reversed and remanded, the court stated that it was "unnecessary" to reach the issue of the sufficiency of the evidence. We conclude that it was necessary for the court of appeals to reach and decide that issue.

It is elemental that the due process clause of the fourteenth amendment protects a defendant in a criminal case against conviction ". . . except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364 (1970). In recognition of this requirement, the United States Supreme Court has stated that:

". . . *Winship* presupposes as an essential of the due process guaranteed by the Fourteenth Amendment that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson v. Virginia,* 443 U.S. 307, 316 (1979).

If the evidence at a defendant's trial was insufficient to support a conclusion that every element of the crime was established beyond a reasonable doubt, the defendant should have been acquitted. Thus, in *Jackson,* the court recognized that if a defendant was convicted in state court, and the conviction is based on insufficient evidence, the conviction ". . . cannot constitutionally stand." 443 U.S. at 318.

The United States Supreme Court also has held that once an appellate court has determined that there is insufficient evidence to sustain a defendant's conviction, the Double Jeopardy Clause of the fifth amendment to the United States Constitution precludes that court from ordering that the defendant be retried. The ban on double jeopardy set forth in the fifth amendment to the United States Constitution is applicable to the states through the fourteenth amendment. *Benton v. Maryland,* 395 U.S. 784 (1969). If an appellate court determines that the evidence is insufficient, the only remedy available to the court is to order a judgment of acquittal. *Burks v. United States,* 437 U.S. 1, 18 (1978).

In *Burks,* the Court indicated that the Double Jeopardy Clause does not preclude an appellate court from reversing a defendant's conviction and ordering a new trial because of an error in the trial court proceedings. The Court cited the following rational for this conclusion:

". . . reversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect . . . When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished." 437 U.S. at 15.

That rationale is inapplicable, however, when a conviction has been overturned because it is not supported by sufficient evidence. As the court noted in *Burks:*

"Since we necessarily afford absolute finality to a jury's *verdict* of acquittal . . . it is difficult to conceive how society has any greater interest in retrying a defendant when, on review, it is decided as a matter of law that the jury could not properly have returned a verdict of guilty." 437 U.S. at 16. (Emphasis in original.)

Thus, the Court concluded that the Double Jeopardy Clause prohibits an appellate court from ordering a second trial once it has determined that the evidence is insufficient to sustain the defendant's conviction.

Based on the above, it is clear that if a defendant contends on appeal that his or her conviction is not supported by sufficient evidence, and if the appellate court agrees, due process requires that the conviction be

reversed. It is also clear that the Double Jeopardy Clause precludes the appellate court from ordering that the defendant be retried, even though a new trial may otherwise have been warranted because of errors that occurred during the trial at which the defendant was convicted. We therefore hold that where a defendant claims on appeal from a conviction that the evidence is insufficient to sustain the conviction, the appellate court is required to decide the sufficiency issue even though there may be other grounds for reversing the conviction that would not preclude retrial. If the appellate court concludes that there is insufficient evidence to sustain the conviction, it ordinarily would be precluded by the Double Jeopardy Clause from ordering a new trial even though a new trial might otherwise have been warranted because of an error in the trial court proceedings.

We note that in *Greene v. Massey*, 437 U.S. 19 (1978), the United States Supreme Court expressly reserved the question of whether an appellate court could order a retrial following a reversal in which evidence was found to have been erroneously admitted and the other admissible evidence was insufficient to sustain the conviction. *See* 437 U.S. at 26, n. 9. Because this case does not involve allegations of erroneously admitted evidence, we need not decide whether the Double Jeopardy Clause precludes an appellate court from ordering a retrial once it has concluded that evidence was erroneously admitted, and that the admissible evidence was insufficient to sustain the conviction.

In this case, although the court of appeals concluded that reversal and a new trial were warranted because it concluded that an error in the jury instructions was not harmless, it nevertheless was required to consider the sufficiency of the evidence issue to determine if that issue had merit. If the court had concluded that there

was insufficient evidence to support Ivy's convictions, it then would have been precluded by the Double Jeopardy Clause from ordering a new trial even though the jury instructions may have been erroneous. Under those circumstances, the remedy would have been to order a judgment of acquittal. *Burks*, 437 U.S. at 18.

When this court granted the petition for review in this case, we stated that we would not consider issues raised in the court of appeals and not decided by that court. As noted above, the issue of the sufficiency of evidence was raised in the court of appeals and was not decided by that court. In accordance with our order granting the petition for review, the parties have not presented arguments to this court on the issue of the sufficiency of evidence. We therefore reverse and remand to the court of appeals with directions to decide the sufficiency of evidence issue that the parties raised on appeal to that court.

*By the Court.*—The decision of the court of appeals is reversed and cause remanded to the court of appeals with directions.