State of Wisconsin, Plaintiff-Respondent,
v.
Mistye L. Doughty, Defendant-Appellant.
No. 03-1187-CR.
Court of Appeals of Wisconsin.
Opinion Filed: April 13, 2004.
Before Cane, C.J., Hoover, P.J., and Peterson, J.
¶1. PER CURIAM.
Mistye Doughty appeals a judgment convicting her of felony murder arising out of an armed robbery. She argues that the State failed to present sufficient evidence that she was a party to the armed robbery. We reject this argument and affirm the judgment.
¶2. The State presented evidence that Mistye and her husband, Matthew, went to Doug Tappa's home from which he operated a jewelry business. Matthew struck Tappa at least thirty times with a wrench, killing him. They then left Tappa's home together, taking two briefcases of jewelry with them. They later pawned the jewelry and split the proceeds.
¶3. Although he was called by the State, Matthew's testimony was favorable to Mistye. He testified that Mistye did not take part in the planning or commission of the armed robbery. Rather, they went to the Tappa residence to discuss some fake diamonds discovered in jewelry they had previously purchased from Tappa. They had no intention of robbing him. While Mistye was using Tappa's bathroom, Matthew got in an argument with Tappa, picked up a wrench from a countertop and inflicted several blows to Tappa's head. When Mistye returned from the bathroom, she tried to stop Matthew from hitting Tappa, but he threatened her and she ran out to the car. Matthew then took the jewelry as a crime of opportunity. He testified that Mistye was crying when he returned to the car and would not touch any of the briefcases or jewelry.
¶4. Mistye's argument that the State failed to prove her complicity in the armed robbery depends entirely on Matthew's testimony. The jury was not required to believe Matthew's account of the incident. See State v. Berg, 116 Wis. 2d 360, 365-66, 342 N.W.2d 258 (Ct. App. 1983). Matthew's testimony was inconsistent with the testimony of other witnesses and with physical evidence.
¶5. Renee Rogers, a friend with whom they had been staying, testified that Mistye spoke of robbing Tappa weeks before the incident. Rogers testified that Mistye was the more aggressive one, constantly pushing Matthew to rob Tappa to support her drug habit. Mistye knew Tappa and had been to his house before, stating that it would be easy to rob him because there were no cameras. Matthew's version of the incident as recited to Rogers after the murder, which the jury could also reject in whole or in part, described a plan for Mistye to steal jewelry while Matthew "distracted" Tappa. Matthew told Rogers that he struck Tappa when Mistye took too long to do what she was supposed to do, suggesting that she was in the room when the assault began. Rogers testified Mistye also assisted Matthew in disposing of his bloody clothes and the murder weapon. Mistye started trying on the jewelry and acted like she "won the lottery."
¶6. The jury could also reasonably disbelieve Matthew's testimony that he picked up the wrench from Tappa's countertop. A wrench comparable to the murder weapon was missing from a set Matthew owned. The jury could reasonably infer that he took the wrench with him to use as a weapon while robbing Tappa.[1] Matthew's testimony that he made an appointment to discuss the fake diamonds a week earlier was contradicted by his later testimony that he did not find out about the fake diamonds until the morning of the murder. Matthew's testimony that Mistye was upset and would not touch the jewelry was contradicted by Rogers' testimony and physical evidence. Mistye's fingerprint was found on a jewelry box that, according to Matthew, she did not touch. Based on all of these inconsistencies, the jury could reasonably discount some or all of Matthew's testimony.
¶7. Without utilizing Matthew's testimony, the jury could reasonably find beyond a reasonable doubt that Mistye was fully complicit in the armed robbery. She conspired with Matthew to commit the crime and aided and abetted him during and after the crime. When reviewing the sufficiency of the evidence, we must construe the evidence in the light most favorable to the verdict and allow the jury to draw reasonable inferences from the evidence. See State v. Poellinger, 153 Wis. 2d 493, 501, 451 N.W.2d 752, (1990); Bautista v. State, 53 Wis. 2d 218, 223, 191 N.W.2d 725 (1971).
¶8. The jury could believe that Mistye and Matthew planned the crime together, went armed from Rogers' home to Tappa's residence, killed Tappa, took his jewelry, left together, destroyed evidence together and approximately equally split the proceeds. Without the benefit of Matthew's favorable testimony, the record contains no evidence that Mistye withdrew from the conspiracy, attempted to stop Matthew while he was hitting Tappa, disapproved of his crime or was upset by his actions. Rather, her statements before the robbery and her attitude, assistance in destroying the evidence and sharing the proceeds after the robbery support the inference that she was a party to the armed robbery and murder.
¶9. Mistye's argument that she withdrew from the conspiracy fails for several reasons. First, other than Matthew's testimony which the jury was not required to believe, there is no evidence of withdrawal. In addition, the jury could reasonably find that Mistye was an aider and abetter, not merely a co-conspirator. Withdrawal is only a defense to conspiracy, not to aiding and abetting. See Wis. Stat. § 939.05(2) (2001-02). Finally, even Matthew's testimony does not show timely withdrawal from a conspiracy. A perpetrator withdrawing from a conspiracy must notify the other conspirators within a reasonable time before the crime is committed. See Bergeron v. State, 85 Wis. 2d 595, 609, 271 N.W.2d 386 (1978). Attempting to stop Matthew after he had already inflicted several blows to Tappa's head does not constitute timely withdrawal from the conspiracy to rob Tappa.
By the Court.  Judgment affirmed.
NOTES
[1] Even if Mistye did not know that Matthew was armed with the wrench when they went to Tappa's residence to rob him, she is nonetheless a party to the armed robbery. See State v. Ivy, 119 Wis. 2d 591, 597-98, 350 N.W.2d 622 (1984). An aider and abetter may be guilty of not only the crime of which he or she has knowledge, but also of the crimes of confederates that are a natural and probable consequence of the particular act the defendant knowingly aided or encouraged. See id.