# COURT OF APPEALS
## DECISION
## DATED AND FILED

## January 27, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP2338-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2022CF2188

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

DAYLIN T. BRIDGES,

   DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Milwaukee County: JEAN M. KIES, Judge. *Affirmed*.

Before White, C.J., Donald, and Geenen, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Daylin T. Bridges appeals a judgment convicting him of one count of first-degree reckless homicide as a party to a crime and two counts of first-degree recklessly endangering safety as a party to a crime. Bridges contends that the trial court issued an erroneous jury instruction and that the evidence was insufficient to support the homicide conviction. Upon review, we affirm.

## BACKGROUND

¶2 On June 4, 2022, the State charged Bridges with one count of first-degree reckless homicide as a party to a crime and two counts of first-degree recklessly endangering safety as a party to a crime. The charges stemmed from a shooting that took place outside of a Milwaukee home resulting in the death of one woman and injuries to another. According to the facts adduced from the record, Bridges, along with Omarion McNealy and Rashaun Seaberry, were attending a graduation party at Seaberry's house when they noticed a vehicle pass by the home multiple times. Bridges, McNealy, Seaberry, and others began shooting at the vehicle, striking it several times. Unbeknownst to the shooters, the three occupants of the vehicle were Bridges' girlfriend, C.F., McNealy's girlfriend, and Seaberry's former girlfriend. C.F. died at the scene and McNealy's girlfriend was injured.

¶3 After the shooting, police searched Seaberry's house and discovered five handguns, four of which were hidden inside a pillowcase in a drawer in the basement. Police also recovered several casings, bullets, and bullet fragments from the vehicle and the area around the vehicle. Forensic testing matched most of the casings and projectiles to the guns found in the house; however, the two

bullets recovered from C.F.'s body were not conclusively linked to any of the five guns.

¶4 Police conducted a ***Mirandized***[1] interview with Bridges in the days following the shooting. Bridges admitted that he shot at the vehicle and that he and several others became concerned after seeing the vehicle drive by the house multiple times. He stated that McNealy, Seaberry, himself, and several others stood on both sides of the house holding guns after they saw the vehicle pass for the second time. When the car drove by a third time, Bridges heard someone say "on that car" and then heard gun shots. Bridges and the others fired their weapons towards the vehicle as well. Bridges estimated that he shot about ten to twelve shots before running back into the house. He collected the guns that had been used in the shooting, put them in a pillowcase, and hid them.

¶5 The matter proceeded to trial where the jury heard Bridges' interview. The jury also heard testimony from the other two occupants of the vehicle, several law enforcement officers, and the firearms examiner who examined the recovered projectiles and guns. At the close of evidence, the trial court issued modified jury instructions as to aiding and abetting first-degree reckless homicide, prompting counsel for Bridges to object[2] on the grounds that

---

[1] *See **Miranda v. Arizona***, 384 U.S. 436 (1966).

[2] Counsel for Bridges first objected to the trial court's modified jury instructions on the first day of trial, stating:

"My concern … is that the jury instruction which says party to a crime in many places … says the defendant or the person, and clearly the defendant is not the person who fired the death shot…. So my concern … is [that it is] going to be confusing for the jury if we have statements saying that either the defendant or the person. That he aided and abetted and caused the death of [the victim]. I think that's basically the problem. There [are] a number of places throughout the instruction where that language is used."

(continued)

the trial court's modified instructions would confuse the jury. The trial court overruled the objection.

¶6 The jury ultimately found Bridges guilty on all three charges. The trial court sentenced Bridges to 20 years of imprisonment on the first-degree reckless homicide charge, with two 5-year sentences on the first-degree reckless endangerment charges running concurrently. This appeal follows.

## DISCUSSION

¶7 On appeal, Bridges contends that the trial court erroneously instructed the jury with regard to whether first-degree reckless homicide was a natural and probable result of Bridges aiding and abetting the first-degree reckless endangerment crime. He contends that the trial court deviated from the standard party to a crime jury instruction on aiding and abetting, WIS JI—CRIMINAL 406, "which explains that when a defendant intentionally aids and abets a person who directly commits a crime, the defendant is also guilty of any crime that is the natural and probable consequence of the underlying crime." He argues that the trial court's instruction erroneously indicated that the jury "could convict if [it] found that [Bridges] had *either* intentionally aided and abetted the person who recklessly endangered safety *or* if [it] found that [Bridges] had directly committed the crime of recklessly endangering safety himself." (Emphasis in original.) He also contends that the modified instruction relieved the State of its burden of proof, and that there was insufficient evidence to support the conviction for first-degree reckless homicide as a party to the crime.

---

At the close of evidence, counsel referred to his statements at the beginning of the trial to reiterate his objection.

¶8     A trial court has broad discretion in instructing a jury but must exercise that discretion in order to fully and fairly inform the jury of the applicable rules of law. *State v. Coleman*, 206 Wis. 2d 199, 212, 556 N.W.2d 701 (1996) (citation omitted).   Whether a crime charged was a natural and probable consequence of the crime with which a defendant allegedly assisted is a factual issue for the jury. *State v. Ivy*, 119 Wis. 2d 591, 601, 350 N.W.2d 622 (1984). Whether a jury instruction is appropriate, under the given facts of a case, is a legal issue subject to independent review. *See State v. Pettit*, 171 Wis. 2d 627, 639, 492 N.W.2d 633 (Ct. App. 1992).

¶9     In evaluating instructions given to a jury, an error may be rendered harmless if other correct statements of law are contained in the instructions; however, "even if the error is not rendered harmless by other portions of the instructions, there is no reversible error unless it may reasonably be said that, had the error not been made, the verdict might probably have been different." *State v. Paulson*, 106 Wis. 2d 96, 108, 315 N.W.2d 350 (1982) (citation omitted).  In other words, an error is harmless if it is "'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'" *State v. Beamon*, 2013 WI 47, ¶27, 347 Wis. 2d 559, 830 N.W.2d 681 (citation omitted).  This determination requires the court to consider the totality of the circumstances. *Id.*

¶10    Assuming without deciding that the trial court's modified instruction was erroneous, the error was harmless because Bridges was not prejudiced by the manner in which the jury was instructed.  In order to prove that Bridges was guilty of first-degree reckless homicide as a party to the crime, the State needed to prove: (1) that Bridges intentionally aided and abetted in the crime of first-degree recklessly endangering safety; (2) that the crime of first-degree reckless homicide was committed; and (3) that first-degree reckless homicide was a natural and

5

probable consequence of first-degree recklessly endangering safety. *See* WIS JI—CRIMINAL 406. Regardless of any potentially erroneous jury instructions, the State met its burden of proof on each of these elements.

¶11 As to the first factor, a person recklessly endangers safety in the first-degree if he or she "recklessly endangers another's safety under circumstances which show utter disregard for human life." WIS. STAT. § 941.30(1). This requires the State to prove that the person: (1) endangered the safety of another person; (2) by criminally reckless conduct; and (3) the circumstances of that conduct showed utter disregard for human life. WIS JI-CRIMINAL 1345. Here, Bridges admitted that he, along with several others, fired shots at what they thought was an unknown vehicle. Several bullet casings were recovered at the scene, bullet holes were found in the vehicle, and the two surviving victims attested to the shooting. A person aids and abets in the commission of a crime by knowingly either (1) assisting the person who commits the crime, or (2) being ready and willing to assist the person who commits the crime. *State v. Hibbard*, 2022 WI App 53, ¶12, 404 Wis. 2d 668, 982 N.W.2d 105; *see also* WIS JI—CRIMINAL 406. The person who commits the crime must also know of the willingness to assist. *See id.* Here, Bridges admitted that when the vehicle drove by a second time, he and several others took positions on the street while armed. He began firing after a co-actor declared "on that car." He then attempted to hide the firearms involved in the shooting. Based on this evidence, a reasonable jury could find that Bridges aided and abetted in committing the crime of first-degree recklessly endangering safety.

¶12 As to the second factor—that a first-degree reckless homicide was committed—the State was required to prove that one of the shooters (1) caused the death of another person; (2) by criminally reckless conduct; and (3) the

6

circumstances of that conduct showed utter disregard for human life. WIS JI—CRIMINAL 1022. Here, the State showed that C.F. was killed as a result of the shots fired from one of the many shooters. A reasonable jury could find that multiple people taking up arms and shooting at a moving vehicle, resulting in C.F.'s death, was criminally reckless and showed utter disregard for human life.

¶13    As to the final factor—that first-degree reckless homicide was a natural and probable consequence of first-degree recklessly endangering safety—a reasonable jury could find that multiple people shooting at a vehicle could naturally and probably result in the death of one of the vehicle's occupants. Thus, even if the trial court erroneously instructed the jury on first-degree reckless homicide as a party to a crime, that error was harmless because it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *See **Beamon***, 347 Wis. 2d 559, ¶27 (citation omitted).

¶14    Bridges also contends that the evidence was insufficient to support the first-degree reckless homicide as a party to the crime conviction because the State did not show that he acted in concert with or was otherwise associated with the person who killed C.F. Again, we disagree.

¶15    Although we have discussed the evidence presented at trial, for completeness we note that when reviewing whether there was sufficient evidence to support a jury's verdict, this court "may not substitute its judgment for that of the trier of fact unless the evidence, viewed most favorably to the [S]tate and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." ***State v. Poellinger***, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990). This standard applies whether the evidence is direct or circumstantial. *See **id.*** at 503. "Our review of a

sufficiency of the evidence claim is therefore very narrow." *State v. Hayes*, 2004 WI 80, ¶57, 273 Wis. 2d 1, 681 N.W.2d 203. This court "will uphold the conviction if there is any reasonable hypothesis that supports it." *State v. Smith*, 2012 WI 91, ¶24, 342 Wis. 2d 710, 817 N.W.2d 410.

¶16 A person may be convicted as a party to a crime, even if he did not directly commit the crime, if he intentionally aids and abets its commission. *See State v. Sharlow*, 110 Wis. 2d 226, 238, 327 N.W.2d 692 (1983) (citation omitted). As stated, a person intentionally aids and abets the commission of a crime when he or she knowingly either assists the person who commits the crime or is ready and willing to assist, and the person who commits the crime knows of that willingness. *See* WIS JI—CRIMINAL 400. "Intent for purposes of establishing liability as an aider and abettor is evidenced by knowledge or belief that a person is committing or intends to commit a criminal act." *Ivy*, 119 Wis. 2d at 606.

¶17 Bridges contends that the State failed to prove the requisite intent to show that he aided and abetted the person who killed C.F. As stated, the State presented ample evidence to support the jury's verdict. The jury heard evidence that Bridges took up arms with several other individuals, positioned himself on the street where he saw a vehicle circle the area multiple times, began shooting with multiple others upon hearing "on that car," and then attempted to hide multiple firearms. A jury is allowed to make reasonable inferences from the evidence. *See Poellinger*, 153 Wis. 2d at 506. We "must accept and follow the inference drawn by the trier of fact unless the evidence on which that inference is based is incredible as a matter of law." *Id.* at 507. The evidence supports the jury's inference that Bridges intended to aid and abet whoever killed C.F. We cannot conclude that the jury's inference is incredible as a matter of law.

¶18    For the foregoing reasons, we affirm the judgment of conviction.

*By the Court.*—Judgment affirmed.

This opinion will not be published.    *See* WIS. STAT. RULE 809.23(1)(b)5.